

# IN THE MISSOURI COURT OF APPEALS
## WESTERN DISTRICT

JAMES C. BOWMAN, )
                                      )
                    **Appellant,** )
                                        )

v. )     **WD79276**
                                        )

                                        )
**CENTRAL MISSOURI AVIATION, INC.,** )    **OPINION FILED:**
**and TREASURER OF THE STATE OF** )    **August 23, 2016**
**MISSOURI AS CUSTODIAN FOR THE** )
**SECOND INJURY FUND,** )
                                        )
                 **Respondents.** )

---

**Appeal from the Labor and Industrial Relations Commission**

**Before Division Two:** Karen King Mitchell, Presiding Judge, and
Cynthia L. Martin and Gary D. Witt, Judges

James Bowman appeals from a decision of the Labor and Industrial Relations Commission denying his claim for workers' compensation benefits. Bowman raises three claims on appeal: (1) the Commission erred in discrediting Bowman's medical expert; (2) the Commission erred in finding Bowman's preexisting psychological injury to be the prevailing factor in his disability; and (3) the Commission erred in finding that the Second Injury Fund had no liability to Bowman. Finding no error, we affirm.

## Background

On June 20, 2005, Central Missouri Aviation (CMA) hired Bowman as a line technician. His duties were directing traffic on the tarmac, cleaning and servicing planes, fueling planes, putting planes up in the hangar or pulling planes out of the hangar, catering, and attending to any other customer needs.

On July 16, 2007, a pilot who had just arrived approached Bowman and advised Bowman, "You need to get in there and do the lav." Bowman responded, "There's already somebody in there, you don't need to reiterate." The pilot then pressed his left forearm against Bowman's chest, placed his right hand around Bowman's throat, and pushed Bowman against the nose of the plane. The incident lasted approximately five seconds. Bowman suffered no physical injuries as a result of the incident, but he felt scared, confused, and helpless because everyone in management at CMA had already left for the day, so there was no one to whom he could immediately report the incident. That night, Bowman had difficulty sleeping and trouble concentrating because he felt violated. Bowman contacted the human resources representative the following day to report the incident, and he requested medical help to deal with the situation. CMA refused to pay for any medical treatment beyond the health insurance it was already providing for Bowman. Bowman did not work again after that day. On December 14, 2007, CMA terminated Bowman's employment for lack of attendance.

Bowman sought out psychological treatment on his own at Green Meadows Adult Psychiatry Clinic (Green Meadows). Bowman had previously sought treatment at Green Meadows on May 4, 2007, shortly before the incident with the pilot, because his girlfriend and roommate had become concerned with his behavior. Bowman had begun screening people as they came into his home, and he was experiencing problems with intense anxiety, agitation,

2

feelings of insecurity, nervousness, and paranoia. During the May 4, 2007 evaluation, Bowman revealed that, in January 2003, an armed intruder entered his home, struck him with a gun, forced him to drive somewhere, then stole his money, kicked him out of the car, and drove away. Bowman felt helpless and frantic during the incident, believing that he would be killed. Afterward, he suffered from acute sleep problems (resulting from fear) and felt insecure, hopeless, afraid, and unsettled. He became isolated and distrustful of people, but, as time passed, he found it easier to leave his home and to work. Bowman also revealed, during the evaluation, that he had been in a rehabilitation program twice for marijuana usage. The evaluation resulted in a diagnosis of generalized anxiety disorder.

Following the 2007 incident with the pilot, Bowman received therapy from Linda Hodges. Ms. Hodges discussed the symptoms of post-traumatic stress disorder (PTSD) with Bowman, and he agreed that the diagnosis of PTSD "fits [him] to a 'T'" because he experienced many of those symptoms following the 2003 kidnapping. Ms. Hodges suggested to Bowman that his response to the 2007 work incident likely would not have been so severe had he not experienced the 2003 kidnapping.

On January 24, 2008, Bowman filed a claim for workers' compensation, claiming psychological injuries from the July 16, 2007 incident with the pilot. Bowman alleged that he was permanently partially disabled. To support his claims, Bowman underwent an evaluation by psychiatrist Dr. A. E. Daniel. Dr. Daniel concluded that Bowman is permanently and partially disabled and that the 2007 work incident was "the sole prevailing factor in the causation of his disability." CMA retained Dr. Wayne Stillings to conduct a separate evaluation. Dr. Stillings concluded that Bowman was "probably disabled from employment," but determined that the disability was "due to pre-existing psychiatric problems." Specifically, Dr. Stillings opined that

3

Bowman's need for psychiatric treatment "is prevailingly causally related to his pre-existing, inherent psychiatric disorders and possibly the life-threatening incident in 2003, neither of which was aggravated by the 07/2007 work incident."

The Administrative Law Judge (ALJ) found "Dr. Stillings'[s] opinions regarding the cause of [Bowman]'s PTSD . . . much more persuasive than those of Dr. Daniel." The ALJ noted:

> While I would disagree with Dr. Stillings'[s] apparent opinion that the July 16, 2007 incident did not "exacerbate" (at least temporarily) [Bowman]'s pre-existing PTSD, the remainder of Dr. Stillings'[s] opinions appear much more in line with the facts of the case than do Dr. Daniel's opinions.

The bases for the ALJ's rejection of Dr. Daniel's conclusions are as follows:

> I find it very difficult to believe that Dr. Daniel did any type of thorough review of [Bowman]'s treatment records, particularly the records from Green Meadows Adult Psychiatry Clinic. Dr. Daniel obviously did not know that [Bowman] was having panic attacks 2-3 times a month prior to July 16, 2007. It is almost impossible to believe that Dr. Daniel reviewed the August 1, 2007 [report] . . . where [Bowman] and his therapist agree that [Bowman] suffered from classic PTSD symptoms from and after the 2003 robbery/kidnapping incident. As Dr. Daniel also states "(d)etailed inquiry did not indicate that [Bowman] has any substance abuse-related legal or occupational problems[,]" it is extremely difficult to see how he could miss the references to [Bowman]'s daily marijuana use in the July and August 2007 records, and how he could not see that [Bowman] was being treated for "cannabis dependence" and how Dr. Daniel could miss the many references to [Bowman]'s legal problems involving marijuana possession, drug court[,] and probation.

The ALJ concluded that Bowman's "PTSD was caused by the 2003 robbery/kidnapping incident, and not by the July 16, 2007 incident[,]" which "was nothing more than a triggering or precipitating factor in an exacerbation of the already-existing symptoms of the already-existing PTSD." The ALJ expressly found the 2007 work incident "was NOT the prevailing factor in the cause of [Bowman]'s PTSD. The 2003 robbery/kidnapping incident WAS the prevailing factor in the cause of [Bowman]'s PTSD." Upon determining that the 2007 work incident was not the

4

prevailing factor in causing Bowman's PTSD, the ALJ found "there is no 'compensable injury'" and denied all of Bowman's claims.

Bowman applied to the Commission for review of the ALJ's decision. The Commission upheld the ALJ's determination but issued a supplemental decision, incorporating the ALJ's decision "to the extent not inconsistent with [the] supplemental decision." In the supplemental decision, the Commission noted the starkly contrasting opinions of Dr. Daniel and Dr. Stillings, but stated: "[O]ur analysis does not turn on the simple either/or question whether the 2003 or 2007 event caused [Bowman] to suffer the medical diagnosis of PTSD . . . because it is possible for [Bowman] to have suffered psychiatric injury from *both* events." The Commission noted that Bowman "had the burden of proving that the work accident was the prevailing factor causing a resulting medical condition and disability." It then pointed out that "the term 'medical condition' is in no way synonymous with 'medical diagnosis.'" The Commission noted:

> There is evidence in this record which, if believed, would support findings that [Bowman] suffered from PTSD in the past, that (although he may have been left in a more fragile state) this condition because quiescent for an extended period of time leading up to the date of injury, and that the sudden, violent assault at the workplace caused a permanent worsening of the latent condition, a permanent increase in disability, and a need for medical care that otherwise would never have been required.

The Commission then concluded that its "inquiry must begin with the sole question whether Dr. Daniel persuasively established that the July 2007 accident was the prevailing factor causing [Bowman] to suffer a resulting psychiatric condition and disability, *regardless* of whether [Bowman] was also suffering (or had previously suffered) from preexisting psychiatric conditions and/or disabilities."

The Commission first noted that the only objective psychological test Dr. Daniel administered (the MMPI-II) yielded invalid results; thus, Dr. Daniel's analysis was based "on

5

[Bowman]'s subjective complaints and symptoms." "As a result," the Commission determined, "the persuasive force of Dr. Daniel's opinion turns to a substantial degree upon the extent to which [the Commission] c[ould] rely upon [Bowman]'s subjective description of his history, complaints, and symptoms." The Commission then identified numerous "material inconsistencies" in Bowman's testimony and statements to evaluating and treating physicians involving things such as his marijuana usage, his feelings about the 2003 kidnapping, and his interactions with the pilot after the work incident. Based upon these inconsistencies, the Commission found that Bowman "[wa]s an unreliable witness," and "[w]here [the Commission was] unable to rely on [Bowman's] self-reported subjective complaints and symptoms, it follows that [it] c[ould] not rely on the causation opinions from Dr. Daniel that were substantially derived therefrom." Accordingly, the Commission deemed "Dr. Daniel's testimony insufficiently persuasive to satisfy [Bowman's] burden of proof," and, therefore, "the accident of July 16, 2007, was not the prevailing factor causing claimant to suffer any psychiatric condition or disability." The Commission expressly declined "to weigh the relative credibility of [CMA's] contrary expert medical opinion evidence from Dr. Stillings" in light of its determination that "the opinions from Dr. Daniel [were] insufficient to satisfy [Bowman's] initial burden of proof with respect to the issue of medical causation." Bowman appeals.

**Standard of Review**

"We review the whole record to determine whether there is sufficient competent and substantial evidence to support an award under the Workers' Compensation Law or if the award is contrary to the overwhelming weight of the evidence." *Smith v. Capital Region Med. Ctr.*, 458 S.W.3d 406, 414 (Mo. App. W.D. 2014).

> The findings of the commission as to the facts, if supported by competent and substantial evidence and in the absence of fraud, shall be conclusive, and the

6

jurisdiction of the appellate court shall be confined to questions of law. The court, on appeal, may modify, reverse, remand for rehearing, or set aside the decision of the commission on the following grounds and no other:

(1) That the commission acted without or in excess of its powers;

(2) That the decision was procured by fraud;

(3) That the facts found by the commission do not support the award; or

(4) That there was no sufficient competent evidence in the record to warrant the making of the award.

§ 288.210.[1] "When the Commission affirms and adopts the ALJ's award, we review the ALJ's findings as adopted by the Commission." *Angus v. Second Injury Fund*, 328 S.W.3d 294, 297 (Mo. App. W.D. 2010) (quoting *ABB Power T & D Co. v. Kempker*, 236 S.W.3d 43, 48 (Mo. App. W.D. 2007)).

## Analysis

Bowman raises three claims on appeal. First, he argues that the Commission erred in finding Dr. Daniel's opinion regarding medical causation "insufficiently persuasive to satisfy [Bowman's] burden of proof." Second, he argues that the Commission erred in finding that Bowman's preexisting psychiatric injury, rather than the 2007 work incident, was the prevailing factor in causing Bowman's medical condition and disability, and that he was entitled to compensation because the 2007 work incident was the prevailing factor in either causing the medical condition or exacerbating the preexisting medical condition. Finally, Bowman argues that the Commission erred in determining that there was no Second Injury Fund liability as a result of its determination that Bowman's preexisting injury was the prevailing factor and that the 2007 work incident was not the prevailing factor. Finding no error, we affirm.

---

[1] All statutory citations are to the Revised Statutes of Missouri (2000), as updated through the 2015 Cumulative Supplement, unless otherwise noted.

7

**A. The Commission's finding that Dr. Daniel's opinion was insufficiently persuasive to support Bowman's burden of proof was supported by competent and substantial evidence.**

In his first point, Bowman argues that the Commission erred in finding that Dr. Daniel's causation opinion was based upon Bowman's inconsistent and unreliable statements, rendering Dr. Daniel's opinion insufficiently persuasive to meet Bowman's burden of proof because—he claims—the Commission effectively substituted its own opinion on causation. We disagree.

Though it is true that "[t]he commission may not substitute an administrative law judge's personal opinion on the question of medical causation of [an injury] for the uncontradicted testimony of a qualified medical expert," *Angus*, 328 S.W.3d at 300 (quoting *Wright v. Sports Associated, Inc.*, 887 S.W.2d 596, 600 (Mo. banc 1994)), here, the Commission merely found Dr. Daniel to be unpersuasive, and "we defer to the Commission on issues involving the credibility of witnesses and the weight given to their testimony." *Seifner v. Treasurer of State-Custodian of Second Injury Fund*, 362 S.W.3d 59, 63 (Mo. App. W.D. 2012).

To begin, the Commission expressly found Bowman to be "an unreliable witness." This finding was based upon the following "material inconsistencies":

> [O]n July 25, 2007, and August 20, 2009, during psychiatric treatment visits at University Hospital, [Bowman] admitted daily use of marijuana as a "sacrament." But [Bowman] told Dr. Daniel at his evaluations on January 13 and 19, 2010, that his history of using marijuana was merely "sporadic," and that he wasn't then using marijuana at all. [Bowman] then admitted to Dr. Stillings he was "still" smoking marijuana "on a daily basis" as of January 3, 2012. [Bowman]'s apparent failure to disclose to Dr. Daniel the extent of his use of a non-prescribed psychoactive drug undermines the persuasive force of Dr. Daniel's expert opinions.
>
> [Bowman] also told Dr. Daniel he felt he would be killed by the armed assailant in 2003, yet he told Dr. Stillings the opposite, and testified at the hearing before the administrative law judge that he was not in fear for his life at that time. [Bowman]'s unwillingness or inability to consistently describe his reaction to the 2003 event casts doubt on the ability of the diagnosticians to appropriately evaluate the significance of that event upon [Bowman]'s overall presentation.

8

[Bowman] testified at the hearing before the administrative law judge that he couldn't remember ever receiving an apology from the pilot who assaulted him at work. Yet, on August 3, 2007, [Bowman] told his therapist at University Hospital that the pilot had called and apologized to him, and that as a result he felt conflicted about continuing to pursue legal action against this individual. [Bowman]'s unwillingness or inability to consistently recount these circumstances casts doubt on his testimony as a whole, including his description of subjective complaints and symptoms referable to the accident.

"It is well established that the Commission is free to believe or disbelieve any evidence and that we defer to the Commission's credibility determinations." *Smith v. Capital Region Med. Ctr.*, 412 S.W.3d 252, 262 (Mo. App. W.D. 2013). The bulk of Bowman's arguments suggest that the Commission abused its discretion in determining that Bowman was an unreliable witness. But these arguments simply ignore our standard of review, which requires that "[t]he findings of the commission as to the facts, if supported by competent and substantial evidence and in the absence of fraud, shall be conclusive." § 288.210. Every basis upon which the Commission deemed Bowman unreliable is supported by the record. Bowman has made no allegations of fraud. Thus, the Commission's determination of Bowman's credibility "shall be conclusive." And because the only objective test Dr. Daniel administered returned an invalid result, he was forced to rely solely on Bowman's unreliable "self-reported subjective complaints and symptoms" to reach his conclusions.[2] Doing so undermined the persuasive value of Dr. Daniel's opinion.

But Dr. Daniel's reliance on Bowman's unreliable subjective complaints was not the only basis for the Commission's determination that Dr. Daniel was not persuasive. The Commission's determination was also based upon "the issues identified by the administrative law judge in his award." Like the Commission, the ALJ found Dr. Daniel unpersuasive, but for

---

[2] "In determining compensability and disability, where inconsistent or conflicting medical opinions exist, objective medical findings shall prevail over subjective medical findings. Objective medical findings are those findings demonstrable on physical examination or by appropriate tests or diagnostic procedures." § 287.190.6(2).

different reasons. Specifically, the ALJ questioned Dr. Daniel's attention to detail in reaching his conclusions:

> I find it very difficult to believe that Dr. Daniel did any type of thorough review of [Bowman]'s treatment records, particularly the records from Green Meadows Adult Psychiatry Clinic. Dr. Daniel obviously did not know that [Bowman] was having panic attacks 2-3 times a month prior to July 16, 2007. It is almost impossible to believe that Dr. Daniel reviewed the August 1, 2007 [record] quoted above where [Bowman] and his therapist agree that [Bowman] suffered from classic PTSD symptoms from and after the 2003 robbery/kidnapping incident. As Dr. Daniel also states, "(d)etailed inquiry did not indicate that [Bowman] has any substance abuse-related legal or occupational problems[,"] it is extremely difficult to see how he could miss the references to [Bowman]'s daily marijuana use in the July and August 2007 records, and how he could not see that [Bowman] was being treated for "cannabis dependence" and how Dr. Daniel could miss the many references to [Bowman]'s legal problems involving marijuana possession, drug court and probation.

We find each of these determinations to be fully supported by the record.

This is not a case where the Commission has substituted either the ALJ's personal opinion or its own in place of the medical experts on the issue of causation. In his second point (which will be discussed below), Bowman argues that the Commission erred in finding that the 2003 robbery/kidnapping incident, rather than the 2007 work incident, was the prevailing factor in causing his medical condition and disability. But Bowman misreads the Commission's supplemental decision. Though the ALJ offered an alternative source of causation (the 2003 robbery/kidnapping), the Commission did *not* adopt that part of the ALJ's decision.[3] Unlike the ALJ, the Commission identified *no* alternative source of causation. Instead, the Commission merely found that Bowman failed to meet his burden of proving that the 2007 work incident was the prevailing factor causing his medical condition and disability. And this finding was the sole purpose for the Commission writing a supplemental decision: "We write to make clear that our

---

[3] The ALJ's conclusion also did not constitute a substitution of his own personal opinion for that of Dr. Daniel, as the ALJ's conclusion was based upon Dr. Stillings's evaluation and opinions.

10

analysis does not turn on the simple either/or question whether the 2003 or 2007 event caused [Bowman] to suffer the medical diagnosis of PTSD."

This case is largely similar to our decision in *Seifner*. In that case, the claimant presented a medical expert to support the claimant's claim that repetitive motion required to perform his work was the prevailing factor in causing his medical condition. *Seifner*, 362 S.W.3d at 62. The Second Injury Fund did not present any countervailing experts, but the Commission nevertheless denied compensation on the ground that the claimant failed to meet his burden of proof regarding causation. *Id*. The basis for the Commission's decision was that the claimant's expert lacked credibility because of his reliance on the claimant's inconsistent subjective complaints, and because the expert was impeached by the claimant's hearing testimony regarding how the claimant performed his job, which called into question the expert's opinion that repetitive motion caused the claimant's medical condition. *Id.* at 63. Like Bowman does here, the claimant in *Seifner* argued that the Commission was improperly substituting its own opinion for the uncontradicted medical expert as to causation. *Id.* at 66. This court disagreed, noting that "the Commission did not form its own medical opinion as to causation in this case. Instead, the Commission found that [the expert's] opinion was significantly impeached and was therefore not credible on the issue of causation." *Id.* at 67. This court concluded, "Where the factual basis of [the expert's] causation opinion was impeached, the Commission did not err in disregarding it and finding that [claimant] had not adequately proven the element of causation." *Id*.

Just as in *Seifner*, the Commission here determined that the factual basis for Dr. Daniel's opinion (*i.e.*, Bowman's subjective complaints) was impeached because of Bowman's inconsistencies and Dr. Daniel's apparent failure to thoroughly review Bowman's medical records—a deficiency pointed out by CMA's expert, Dr. Stillings. Thus, just as in *Seifner*, "the

11

Commission did not err in disregarding it and finding that [Bowman] had not adequately proven the element of causation." *Id*. In short, because the Commission's factual determinations of both Bowman's credibility and the persuasive value of Dr. Daniel's opinion based thereon are supported by competent and substantial evidence, and because Bowman has made no allegations of fraud, these findings are conclusive. Point I is denied.

**B. The Commission's finding that Bowman failed to meet his burden of proof was supported by competent and substantial evidence.**

In his second point, Bowman argues that the Commission erred in determining that the 2003 robbery/kidnapping incident, rather than the 2007 work incident, was the prevailing factor causing his medical condition and disability. As noted above, however, the Commission expressly refused to make this determination, and instead simply found that Bowman failed to meet his burden of proving that the 2007 work incident was the prevailing factor in causing his medical condition and disability. We find no error in the Commission's determination.

"The burden of proving an entitlement to compensation . . . is on the [claimant]." § 287.808. "An injury by accident[4] is compensable only if the accident was the prevailing factor in causing both the resulting medical condition and disability." § 287.020.3(1). "'The prevailing factor' is defined to be the primary factor, in relation to any other factor, causing both the resulting medical condition and disability." *Id*. "An injury is not compensable because work was a triggering or precipitating factor." § 287.020.2.

Here, the only evidence Bowman offered in support of his claim that the 2007 work incident was the prevailing factor in causing his medical condition was the opinion of Dr. Daniel. And, as discussed above, the Commission found Dr. Daniel unpersuasive—a finding based upon competent and substantial evidence. Without Dr. Daniel's opinion, Bowman simply did not

---

[4] Both parties agreed that the 2007 work incident constituted an "accident" under § 287.020.2.

12

carry his burden of proving that the 2007 work incident was the prevailing factor in causing his medical condition.[5] *See Seifner*, 362 S.W.3d at 67.

Point II is denied.

## C. The Commission's finding that there was no Second Injury Fund liability was supported by competent and substantial evidence.

In his final point, Bowman again argues that the Commission erred in finding that Bowman's preexisting injury or condition, rather than the 2007 work incident, was the prevailing factor in causing his injury and disability, but he argues in this point that the error was in denying Second Injury Fund (SIF) liability, rather than employer liability. Bowman suggests that SIF liability is triggered "when the accident causes the preexisting non-disabling condition to escalate to the level of a disability." We disagree.

"To establish [SIF] liability, the claimant must show 'either that (1) a preexisting partial disability combined with a disability from a subsequent injury to create permanent and total disability or (2) the two disabilities combined to result in a greater disability than that which would have resulted from the last injury by itself.'" *Portwood v. Treasurer of State of Mo.-Custodian of the Second Injury Fund*, 219 S.W.3d 289, 292 (Mo. App. W.D. 2007) (quoting *Gassen v. Lienbengood*, 134 S.W.3d 75, 79 (Mo. App. W.D. 2004)). "Regardless of which theory a claimant uses, '[w]hen a claim is made against the [SIF] for permanent disability compensation, statutory language and case law make it mandatory that the claimant provide evidence to support a finding, among other elements, that he had a preexisting permanent

---

[5] Bowman offered evidence from Gary Weimholt, a vocational rehabilitation expert, on the issue of whether the 2007 work incident was the prevailing factor in causing his disability. Neither the ALJ nor the Commission made any findings regarding Weimholt's conclusion that Bowman was totally disabled solely as a result of the 2007 work incident. Accepting Weimholt's conclusion as true, Bowman is still not entitled to compensation, as it was his burden to prove that the 2007 work incident was the prevailing factor in causing *both* the medical condition *and* disability. § 287.020.3(1). The Commission determined that Bowman failed to meet his burden to prove causation as to the first inquiry required by the statute, the cause of the medical injury. Therefore, the Commission never reached the issue to which Weimholt's testimony was relevant—whether the work incident was the prevailing factor in causing the disability.

13

"disability."'"" *Id*. (quoting *Messex v. Sachs Elec. Co.*, 989 S.W.2d 206, 214 (Mo. App. E.D. 1999)). In other words, SIF liability is triggered only "by a finding of the presence of an actual and measurable disability at the time the work injury is sustained." *Id*. (quoting *E.W. v. Kansas City Mo. Sch. Dist.*, 89 S.W.3d 527, 537 (Mo. App. W.D. 2002)). "The disability, whether known or unknown, must exist at the time the work-related injury was sustained and be of such seriousness as to constitute a hindrance or obstacle to employment . . . ." *Id*. (quoting *Messex*, 989 S.W.2d at 214).

"Preexisting conditions are not denominated 'disabilities' as of the date of the second injury simply because, at some point in the future, they combine with that injury to render the claimant permanently . . . disabled." *Id*. at 293 (quoting *Gassen*, 134 S.W.3d at 81). Under the pre-2005 version of the workers' compensation law, *an employer* could be "liable where an asymptomatic preexisting condition that did not previously interfere with work duties bec[a]me[] symptomatic and result[ed] in an overall disability only after being aggravated by a work injury." *Id*. at 293-94. But not only is that no longer the law, post-2005 amendments, it also has never been the law with regard to SIF liability. *Id*.

As noted above, the preexisting injury must have constituted a disability of sufficient severity that it "constitute[d] a hindrance or obstacle to employment" before SIF liability can be triggered. § 287.220.2. Here, Bowman candidly acknowledges that "Dr. Daniel's opinion, as well as the vocational expert's opinion, was that [Bowman]'s pre-existing psychological condition was not a hindrance to his employment or re-employment." Without any evidence that Bowman's preexisting condition constituted a hindrance or obstacle to employment as of the 2007 work incident, there simply is no basis for SIF liability.

Point III is denied.

**Conclusion**

The Commission did not err in denying Bowman's request for compensation. Its "Final Award Denying Compensation" is affirmed.

_Karen K Mitchell_
Karen King Mitchell, Presiding Judge

Cynthia L. Martin and Gary D. Witt, Judges, concur.

15