Robert K. DWYER, Respondent,

v.

FEDERAL EXPRESS
CORPORATION,
Appellant.

No. SD 31423.

Missouri Court of Appeals,
Southern District,
Division Two.

Nov. 10, 2011.

David I. Hares, Robert J. Amsler, Jr., St. Louis, for Appellant.

Lawrence H. Rost, New Madrid, for Respondent.

DANIEL E. SCOTT, Judge.

Federal Express (Employer) challenges, in part, a workers' compensation award in favor of Mr. Dwyer (Claimant), who was hurt on the job in February 2001. Employer admitted liability through July 2001, but denied liability for benefits or treatment following a May 2002 incident at Claimant's home. The Labor and Industrial Relations Commission disagreed, finding that Claimant's post–2001 medical condition was causally related to his workplace injury. Employer complains that no sufficient competent evidence supports this finding. We conclude otherwise and affirm the award.

## Facts and Background

The workplace injury occurred when Claimant, then a FedEx courier, was pushing a large container loaded with freight. Two wheels broke, abruptly stopping the container and sending Claimant to his knees. He felt a rip in his low back like something "busting or coming loose." Pain medication, physical therapy, and time off did not alleviate Claimant's severe pain.

In April 2001, Claimant was referred to Dr. Yingling, a neurosurgeon who obtained an MRI, prescribed physical therapy, and sent Claimant to a pain clinic for injections. Claimant's pain "never gave up," but he eventually asked Dr. Yingling to release him back to work because Claimant was afraid of losing his job. Dr. Yingling did so in July 2001.

Claimant's pain continued after he went back to work. Taking paid and unpaid time off to rest his back, including three days in each of 2002's first four months, did not seem to help. His pain worsened.

On Sunday, May 6, 2002, Claimant was at home at his computer. He rose from his chair, collapsed in pain, and almost could not get back up. Claimant called his supervisor at home and reported that his back "had finally just given out."

Employer sent Claimant back to Dr. Yingling. After a second MRI, Dr. Yingling performed back surgery, followed by physical therapy and injections, but Claimant's pain continued. He could not return to work as a courier, but secured part-time office work with Employer.

At Dr. Yingling's recommendation, Claimant eventually had a dorsal column stimulator implanted. As of his 2010 hearing, Claimant had received additional injections, underwent two rhizotomies, and was taking Oxycontin and other medications, none of which relieved his "substantial" pain.

## Conflicting Expert Testimony

Central to this appeal is whether Claimant's work injury was a substantial factor in his medical condition, need for surgery,

and disability after 2001.[1] There was a typical "battle of experts" in the proceedings below. Employer's retained experts (Drs. Kennedy[2] and Tate) opined that Claimant's May 2002 home incident (1) was unrelated to his prior work injury, and (2) caused any medical problems thereafter suffered by Claimant. Conversely, Claimant's experts (Dr. Yingling and a retained expert, Dr. Volarich) testified that Claimant's work injury substantially contributed to his post–2001 medical condition and need for treatment, including surgery.

An ALJ sided with Employer and its experts, but the Commission "reviewed the evidence, read the briefs, heard the parties' arguments and considered the whole record" in unanimously reaching contrary conclusions:

> We are presented with conflicting expert testimony on the issues before us. The administrative law judge implicitly found Drs. Tate and Kennedy more credible than Drs. Yingling and Volarich on the question whether the work injury is a substantial factor in employee's medical condition and disability after July 27, 2001, the last date of Dr. Yingling's initial course of treatment. *We disagree with this finding.*
>
> Dr. Yingling, a board-certified neurosurgeon, was employee's treating doctor after the work injury on February 5, 2001, and thus had the benefit of appraising employee's medical condition and low back complaints from the beginning. In addition to examining employee and providing treatment for low back complaints from April 2001 through August 2008, Dr. Yingling performed the May 2002 bilateral L3–L4 decompression and discectomy. Dr. Yingling was able to evaluate employee's medical condition approximately once a month during employee's course of treatment and observed the progression of employee's low back condition on a firsthand basis. Dr. Yingling found the work injury to be a substantial factor in causing employee's worsening low back symptoms in May 2002 and need for subsequent treatment, including surgery. Dr. Yingling acknowledged that the MRI from May 11, 2002, revealed a disc rupture at L3–L4, which constituted a change in pathology from the disc protrusion shown on the May 3, 2001, MRI—but explained that the rupture was a continuation of the work injury of February 5, 2001, rather than the result of any new injury, and that employee's medical condition and all of his symptoms stem from the work injury, rather than any new injury. Dr. Yingling's opinion was corroborated by Dr. Volarich. *Drs. Tate and Kennedy gave conflicting opinions, but we find their testimony less persuasive than that of Dr. Yingling.*
>
>    \*     \*     \*
>
> Because *we are convinced Dr. Yingling provides the more convincing expert medical testimony in this matter,* we conclude that the work injury is a substantial factor in employee's medical condition and disability after July 27, 2001, and that his need for medical treatment after that date, including the May 2002 surgery and his ongoing need for future medical care, flows from the work injury. [Our emphasis].

## General Principles of Appellate Review

       Our review is limited by statute.

---

1. At that time, an injury was compensable if "work was a substantial factor in the cause of the resulting medical condition or disability." *See* § 287.020.2, RSMo 2000.

2. Dr. Kennedy did not examine Claimant and drew his opinions from medical records.

*See* § 287.495.[3] We review the Commission's findings, not those of the ALJ. *Gregory v. Detroit Tool & Eng'g*, 266 S.W.3d 844, 846 (Mo.App.2008). We consider the whole record to see if sufficient competent and substantial evidence supports the award. *Id.* We defer to the Commission's assessment of witness credibility and the weight given to testimony, including medical evidence. *Id.* We will affirm the Commission's choice between conflicting medical opinions if it is supported by competent and substantial evidence. *Id.* "Substantial" does not denote quantity or even quality, but simply means probative evidence. *Id.* at 846 n. 3.

## Analysis

■ Employer's extensive and varied arguments are of three types:

1. Claimant's experts should not have been believed because . . .

2. Employer's experts were more believable because . . .

3. Claimant's testimony was not credible because . . .

Such arguments, in effect, invite us to violate our rules of review by substituting our view of witness credibility for that of the Commission. We cannot and will not do so. The Commission stated why it believed Claimant's experts, not Employer's experts, as to medical causation.[4] The Commission believed Claimant on stated causation-related issues, despite Employer's attacks on his credibility. These determinations bind us, regardless of our views or Employer's arguments about witness credibility.

This is not the rare case where evidence weighs overwhelmingly against an award. *See Gregory*, 266 S.W.3d at 846. The Commission believed two physicians, one being Claimant's surgeon and treating doctor, whose opinions were admitted without substantive objection. This testimony adequately supports the award; its admission is not challenged on appeal. Employer offered contrary evidence, but we defer to the Commission's choice between competing medical opinions. *Id.* Such decisions lie within the Commission's sole discretion and are not subject to appellate review. *Proffer v. Federal Mogul Corp.*, 341 S.W.3d 184, 187 (Mo.App.2011). We deny Employer's sole point and affirm the award.

BARNEY and BATES, JJ., concur.

---

3. In pertinent part, § 287.495.1 states:
   Upon appeal no additional evidence shall be heard and, in the absence of fraud, the findings of fact made by the commission within its powers shall be conclusive and binding. The court, on appeal, shall review only questions of law and may modify, reverse, remand for rehearing, or set aside the award upon any of the following grounds and no other:
   (1) That the commission acted without or in excess of its powers;
   (2) That the award was procured by fraud;
   (3) That the facts found by the commission do not support the award;
   (4) That there was not sufficient competent evidence in the record to warrant the making of the award.

4. However, the Commission considered Dr. Volarich's testimony and 50% PPD rating, yet awarded Claimant only 30% PPD.