Colleen **NICHOLS**, Claimant-Respondent,

v.

**BELLEVIEW R-III SCHOOL DISTRICT**, Employer-Appellant,

and

**Missouri United School Insurance Council**, Insurer-Appellant,

and

**Treasurer of Missouri, as Custodian of Second Injury Fund**, Additional Party-Respondent.

No. SD 34884

Missouri Court of Appeals, Southern District, Division Two.

Filed: October 16, 2017

Appellants' Attorney: Mary A. Lindsey and Karen A. Mulroy, of St. Louis, MO.

Respondent Nichols's Attorney: Kenneth A. Seufert, of Farmington, MO.

Respondent Fund's Attorney: Joshua Hawley, Attorney General, of Jefferson City, MO, and Crystal L. Williams, Assistant Attorney General, of Cape Girardeau, Missouri.

WILLIAM W. FRANCIS, JR., J.

■ Belleview R-III School District and Missouri United School Insurance Council (collectively "Belleview")[1] jointly appeal the award of the Labor and Industrial

---

1. *See* section 287.030.2. All statutory references are to RSMo as amended and effective through October 29, 2009, the date of Nich-

ols' injury, unless otherwise indicated. *See, Lankford v. Newton County*, 517 S.W.3d 577, 583 n.7 (Mo.App. S.D. 2017).

Relations Commission ("Commission"),[2] which awarded permanent total disability benefits and future medical expenses to Colleen Nichols ("Nichols"), Belleview's former employee. Belleview raises four points on appeal. Finding no merit to any of Belleview's points, we affirm the award of the Commission.

## Standard of Review

This Court's standard of review accords *narrow* authority to countermand an award of the Commission. Belleview's misapprehension of this authority directly, and necessarily, implicates our disposition as to its four points on appeal. A brief exposition as to this authority is therefore necessary to frame the outcome in this matter.

Our constitutional authority to review Commission decisions derives from Mo. Const. art. V, § 18 (amended 1976),[3]

*Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220, 222 (Mo. banc 2003); and our statutory authority from section 287.495.[4] *White v. Anderssen Mobile X-Ray Service*, 389 S.W.3d 222, 224 (Mo.App. E.D. 2012).

■■■ In each of its four points, Belleview purports to impute this Court's authority to countermand an award of the Commission based upon a lack of "sufficient competent evidence in the record," per section 287.495.1(4). In a section 287.495.1(4) challenge, the reviewing court:

- Makes a single inquiry *only* as to whether there was sufficient competent evidence[5] in the record to support the award, and *not* whether the award was against the overwhelming weight of the evidence—this is so because the absence of sufficient competent evidence would *necessarily* mean that the award was

---

**2.** This Court reviews the award of the Commission; however, where, as here, the Commission incorporates the award and decision of the Administrative Law Judge ("ALJ"), we treat the ALJ's findings as part of the award of the Commission. *Maryville R-II School District v. Payton*, 516 S.W.3d 874, 880 (Mo. App. W.D. 2017).

**3.** The relevant portion of art. V, § 18 states:

All final decisions, findings, rules and orders on any administrative officer or body existing under the constitution or by law, which are judicial or quasi-judicial and affect private rights, shall be subject to direct review by the courts as provided by law; and such review shall include the determination whether the same are authorized by law, and in cases in which a hearing is required by law, whether the same are *supported by competent and substantial evidence upon the whole record.*
(Emphasis added).

**4.** The relevant portion of section 287.495.1 states:

Upon appeal no additional evidence shall be heard and, in the absence of fraud, the *findings of fact made by the commission*

*within its powers shall be conclusive and binding.* The court, on appeal, shall review only questions of law and may modify, reverse, remand for rehearing, or set aside the award upon any of *the following grounds and no other*:
(1) That the commission acted without or in excess of its powers;
(2) That the award was procured by fraud;
(3) That the facts found by the commission do not support the award;
(4) That there was not sufficient competent evidence in the record to warrant the making of the award.
(Emphasis added).

**5.** *Hampton* recognized that Mo. Const. art. V, § 18 ("competent and substantial evidence upon the whole record"), and section 287.495.1(4) ("sufficient competent evidence in the record"), are harmonious, *Hampton*, 121 S.W.3d at 222, and therefore interpreted co-extensively. For clarity in this opinion, unless quoting from another authority, we use "sufficient competent evidence." We make this election to emphasize the nature of our *sole* inquiry—singly, we test for evidentiary sufficiency, screened through the lens of evidentiary competency.

contrary to the overwhelming weight of the evidence;

- Looks to the "whole record" for evidentiary support; and

- Does *not* view the evidence and reasonable inferences available from the "whole record" in the light most favorable to the award.

*See Hampton*, 121 S.W.3d at 222-23. Reviewing "the whole record," however, does not mean we *consider* everything in the record. Authorized factual and credibility findings of the Commission, explicit or implied, permanently fix our attitude toward the evidence implicated thereby.[6] *Id.* at 223; *Hornbeck v. Spectra Painting, Inc.*, 370 S.W.3d 624, 629, 631-32 (Mo. banc 2012). The remainder of the record we view objectively. *Jim Plunkett, Inc. v. Ard*, 499 S.W.3d 333, 337 (Mo.App. W.D. 2016). A section 287.495.1(4) challenge succeeds only in the demonstrated *absence* of sufficient competent substantial evidence; evidence *contrary* to the award of the Commission, regardless of quantity or quality, is "irrelevant." *Hornbeck*, 370 S.W.3d at 629.

Summarily, in a *post-Hampton* section 287.495.1(4) challenge, the reviewing court walks through the entire grocery store—the whole record—but only places the *supportive* competent evidence in its cart. At checkout, the court determines whether the cart contains sufficient competent evidence.

Sufficient competent evidence is "evidence which has probative force on the issues and from which the trier of facts can reasonably decide the case." *Morris v. Glenridge Children's Center, Inc.*, 436 S.W.3d 732, 735 (Mo.App. E.D. 2014) (internal quotation and citation omitted). Sufficient competent evidence is a minimum threshold: "[t]he testimony of one witness, even if contradicted by the testimony of other witnesses, may be sufficient competent evidence to support an administrative decision." *Id.* "We will not reverse the Commission's decision if it reaches the right result even if it gave a wrong or insufficient reason for its ruling." *Hedrick v. Big O Tires*, 522 S.W.3d 919, 921-22 (Mo.App. S.D. 2017) (internal quotation and citation omitted).

## Factual and Procedural History

We recite the facts of this matter in accord with our standard of review, *supra.*

In October 2009, Nichols was 55 years old, and worked for Belleview as a substitute teacher's aide and substitute cook. On October 29, 2009, Nichols was injured while working at Belleview when she fell down steps outside a modular classroom, hit the ground with the left side of her body, and rolled into the underpinning of

---

6. An exception to the principle of deference to the Commission as factfinder is that the Commission is not free to disregard the testimony of a qualified medical expert as to medical causation of an injury in the absence of competent countervailing evidence or impeachment. *Seifner v. Treasurer of the State of Missouri-Custodian of the Second Injury Fund*, 362 S.W.3d 59, 66 (Mo.App. W.D. 2012). However, our courts have held that where the party bearing the burden of proof as to causation presents expert medical testimony on that issue, the opposing party has no *burden* of production or impeachment; rather, where the Commission reasonably accounts for finding such testimony not credible, or lacking in persuasive or probative value, the Commission's findings are not in error. *See, id.* at 66-67; *Bowman v. Central Missouri Aviation, Inc.*, 497 S.W.3d 312, 318-21 (Mo. App. W.D. 2016).

The Commission is otherwise free to accept or reject competent medical evidence and testimony—for instance, the Commission has considerable discretion in making its own determinations regarding disability ratings. *See, Taylor v. Labor Pros L.L.C.*, 392 S.W.3d 39, 45-46 (Mo.App. W.D. 2013).

the modular classroom, breaking the underpinning.

The next day, Belleview sent Nichols to the Mineral Area Regional Medical Center emergency room, where Nichols reported pain in her neck, left shoulder, left elbow,[7] and left leg. In the next few weeks, Nichols also began experiencing pain in her left hip and back.

Belleview filed a Report of Injury describing Nichols' injuries as "contusion[s]" to multiple body parts, including her lower left leg.[8] On February 8, 2010, Belleview fired Nichols, based on its opinion that Nichols could no longer perform her job.

Nichols filed a Claim for Compensation on May 13, 2010, describing injury to her back, left hip, left shoulder and left leg, and asserting a claim against the Fund. Nichols filed an Amended Claim for Compensation on January 21, 2011, adding injury to her left elbow, arm, wrist, hand and fingers.[9]

A hearing before an administrative law judge ("ALJ") was held on June 13, 2016. Nichols and Belleview presented expert medical testimony, reports, and medical records,[10] regarding, in relevant part, whether Nichols' injuries were causally related to her work accident at Belleview, and the extent of Nichols' injuries as related to her potential disability rating. Nichols testified personally before the ALJ, indicating her lack of adverse symptoms before her work accident,[11] her many severe medical symptoms thereafter, and the major impact those symptoms had on her ability to work and perform activities in her personal life.

As to medical causation, the ALJ found Nichols' testimony credible; the ALJ also found credible Nichols' medical expert, Dr. Volarich, who indicated that Nichols' work accident was the prevailing factor in her back and neck injuries. The ALJ did not credit Belleview's medical expert, Dr. Chabot, because he "did not review all of the treatment records and the medical records," and because Dr. Volarich was "very persuasive and is more persuasive than the opinion of Dr. Chabot[.]"

As to the nature and extent of Nichols' disability, the ALJ found Nichols to be "very credible and persuasive." [12] Further, the ALJ indicated that on this issue, Nichols' experts, Dr. Volarich and Ms. Gonzalez, were more credible and persuasive

---

7. The record indicates that Nichols is left handed.

8. By appearance, Belleview's description may have been cut off in the limited space of the Report of Injury form, and ends mid-sentence.

9. A Second Amended Claim for Compensation was apparently filed by Nichols sometime in November 2011, but a copy of that claim is not included in the record on appeal.

10. The majority of the materials were admitted without objection by either party.

11. In 2007, an MRI of Nichols' lower back revealed mild degenerative arthritis. This condition did not cause Nichols any problems or pain, and she did not use any medications to treat her lower back before her work injury at Belleview.

12. The ALJ further indicated:

> [Nichols] offered detailed testimony concerning the impact her condition has had on her daily ability to function in the workplace or at home. Her testimony supports a conclusion that [Nichols] will not be able to compete in the open labor market.
>
> [Nichols] was observed during the hearing. She moved around in her chair several times in an effort to get comfortable. She appeared to be in a lot of pain. [Nichols] requested permission to stand and stood during her testimony. She requested to take a break during the hearing. The testimony and observed behavior of [Nichols] was important on the issue of permanent total disability.

than Belleview's experts, Dr. Paletta, Dr. Chabot, and Mr. England.[13]

The ALJ found that Nichols' work accident at Belleview was the prevailing factor in causing her injuries, that Nichols was permanently and totally disabled as a result of her work injuries alone, and awarded total disability benefits of $207.24 per week (as against Belleview), for the remainder of Nichols' life, or until she is restored to her regular work or its equivalent. The ALJ also awarded Nichols costs of future medical care for treatment of her work injuries (as against Belleview). Nichols' claim against the Fund was denied. Belleview appealed to the Commission.

The Commission issued its award on January 12, 2017, unanimously affirming and incorporating the award of the ALJ without modification. This appeal followed.

In four points on appeal, Belleview asserts:

## I.

THE INDUSTRIAL COMMISSION ERRED IN FINDING THE ACCIDENT WAS THE PREVAILING FACTOR CAUSING EMPLOYEE'S CURRENT BACK CONDITION, AND ITS FINDING MUST BE REVERSED, FOR THE REASONS THAT:

### A.

THE COMMISSION'S FINDING WAS WITHOUT SUPPORT IN AND CONTRARY TO THE OVERWHELMING WEIGHT OF THE COMPETENT AND SUBSTANTIAL EVIDENCE-THE FINDINGS OF EMPLOYEE'S TREATING PHYSICIANS, THE DIAGNOSTIC STUDIES, AND THE TESTIMONY OF DR. CHABOT-

WHICH DEMONSTRATED THE ACCIDENT CAUSED A LUMBAR STRAIN, AND EMPLOYEE'S CURRENT BACK CONDITION WAS CAUSED BY THE NATURAL PROGRESSION OF THE PRE-EXISTING DEGENERATIVE DISC DISEASE IN HER LUMBAR SPINE.

### B.

THE COMMISSION ERRED AS A MATTER OF LAW AND ACTED UNREASONABLY IN RELYING ON DR. VOLARICH'S TESTIMONY IN FINDING THE ACCIDENT WAS THE PREVAILING FACTOR CAUSING EMPLOYEE'S CURRENT BACK CONDITION. DR. VOLARICH'S OPINION THE ACCIDENT CAUSED LUMBAR LEFT HIP GIRDLE RADICULOPATHY WAS WITHOUT SUPPORT IN THE MEDICAL EVIDENCE AND BASED ON NOTHING MORE THAN SPECULATION AND CONJECTURE, AND THUS, DID NOT CONSTITUTE SUBSTANTIAL EVIDENCE, WHICH COULD SUPPORT THE COMMISSION'S CAUSATION FINDINGS.

### C.

EMPLOYEE'S TESTIMONY DID NOT CONSTITUTE COMPETENT OR SUBSTANTIAL EVIDENCE WHICH COULD SUPPORT THE COMMISSION'S FINDING THE ACCIDENT WAS THE PREVAILING FACTOR CAUSING HER CURRENT BACK CONDITION, SINCE THE CAUSATION OF THAT CONDITION DID NOT FALL WITHIN THE COMMON KNOWLEDGE OR EXPERIENCE OF LAY UNDER-STANDING,

---

13. Dr. Paletta is the orthopedic surgeon who treated Nichols' left elbow and shoulder inju-ry; Ms. Gonzalez and Mr. England are both vocational rehabilitation counselors.

AND HAD TO BE PROVEN BY COMPETENT MEDICAL OPINION.

## II.

THE INDUSTRIAL COMMISSION ERRED IN FINDING THE ACCIDENT WAS THE PREVAILING FACTOR CAUSING EMPLOYEE'S CURRENT NECK CONDITION, AND ITS FINDING MUST BE REVERSED, FOR THE REASONS THAT:

### A.

THE COMMISSION'S FINDING WAS WITHOUT SUPPORT IN AND CONTRARY TO THE OVERWHELMING WEIGHT OF THE COMPETENT AND SUBSTANTIAL EVIDENCE-THE FINDINGS OF EMPLOYEE'S TREATING PHYSICIANS, THE DIAGNOSTIC STUDIES AND THE TESTIMONY OF DR. CHABOT-WHICH DEMONSTRATED THE ACCIDENT CAUSED A CERVICAL STRAIN, AND EMPLOYEE'S CURRENT NECK CONDITION WAS CAUSED BY THE NATURAL PROGRESSION OF THE PRE-EXISTING DEGENERATIVE DISEASE IN HER CERVICAL SPINE.

### B.

THE COMMISSION ERRED AS A MATTER OF LAW AND ACTED UNREASONABLY IN RELYING ON DR. VOLARICH'S TESTIMONY IN FINDING THE ACCIDENT WAS THE PREVAILING FACTOR CAUSING EMPLOYEE'S CURRENT NECK CONDITION. DR. VOLARICH'S OPINION THE ACCIDENT CAUSED CERVICAL SYNDROME, SECONDARY TO DISC BULGING AT C3-4, C4-5 AND C5-6, WAS WITHOUT SUPPORT IN THE MEDICAL EVIDENCE AND BASED ON NOTHING MORE THAN CONJECTURE AND SURMISE, AND THUS, DID NOT CONSTITUTE SUBSTANTIAL EVIDENCE, WHICH COULD SUPPORT THE COMMISSION'S CAUSATION FINDINGS.

## III.

THE INDUSTRIAL COMMISSION ERRED IN FINDING EMPLOYEE WAS PERMANENTLY AND TOTALLY DISABLED, SOLELY AS A RESULT OF HER WORK INJURIES, AND ITS FINDING MUST BE REVERSED, FOR THE REASONS THAT:

### A.

THE COMMISSION'S FINDING WAS CONTRARY TO THE OVERWHELMING WEIGHT OF THE COMPETENT AND SUBSTANTIAL EVIDENCE-THE FINDINGS OF EMPLOYEE'S TREATING PHYSICIANS, THE DIAGNOSTIC STUDIES, AND THE TESTIMONY OF DR. CHABOT, DR. PALETTA, AND JAMES ENGLAND-WHICH DEMONSTRATED THE ONLY WORK INJURIES EMPLOYEE SUSTAINED WERE LEFT CUBITAL TUNNEL SYNDROME AND LEFT ROTATOR CUFF TEAR, WHICH RESULTED IN PERMANENT PARTIAL DISABILITY TO EMPLOYEE'S LEFT UPPER EXTREMITY; AND STRAIN INJURIES TO HER NECK AND BACK, WHICH RESULTED IN NO PERMANENT PARTIAL DISABILITY TO THE CERVICAL OR LUMBAR SPINE; EMPLOYEE COULD RETURN TO WORK, DESPITE THOSE INJURIES; AND ANY TOTAL DISABILITY EMPLOYEE SUSTAINED RESULTED FROM HER

MULTIPLE IDIOPATHIC CONDITIONS.

## B.

THE COMMISSION ERRED IN RELYING ON EMPLOYEE'S TESTIMONY, SINCE IT DID NOT CONSTITUTE COMPETENT OR SUBSTANTIAL EVIDENCE, WHICH COULD SUPPORT THE AWARD OF PERMANENT TOTAL DISABILITY AGAINST EMPLOYER. EMPLOYEE'S TESTIMONY WAS REFUTED BY THE MEDICAL RECORDS AND THE FINDINGS OF HER TREATING PHYSICIANS; AND IN TESTIFYING REGARDING HER CURRENT SYMPTOMS AND LIMITATIONS, EMPLOYEE FAILED TO DISTINGUISH BETWEEN THOSE SYMPTOMS AND LIMITATIONS, IF ANY, RESULTING FROM HER WORK INJURIES, AND THOSE SYMPTOMS AND LIMITATIONS RESULTING FROM HER MULTIPLE IDIOPATHIC CONDITIONS.

## C.

THE TESTIMONY OF DR. VOLARICH AND DELORES GONZALES DID NOT CONSTITUTE COMPETENT OR SUBSTANTIAL EVIDENCE, WHICH COULD SUPPORT THE COMMISSION'S FINDING EMPLOYEE WAS PERMANENTLY AND TOTALLY DISABLED, SOLELY FROM HER WORK INJURIES. GONZALES MISTAKENLY ASSUMED ALL OF DR. VOLARICH'S RESTRICTIONS RELATED TO EMPLOYEE'S WORK INJURIES; IGNORED THE DISABILITY FINDINGS OF DR. CHABOT AND THE TREATING PHYSICIANS; AND PROVIDED INTERNALLY CONTRADICTORY TESTIMONY REGARDING EMPLOYEE'S DISABILITY. DR. VOLARICH'S DISABILITY OPINIONS WERE CONTRARY TO THE MEDICAL EVIDENCE AND THE FINDINGS OF THE TREATING PHYSICIANS; AND DID NOT REFLECT THE MINOR NATURE OF EMPLOYEE'S WORK-RELATED NECK AND BACK INJURIES.

## IV.

THE INDUSTRIAL COMMISSION ERRED IN FINDING EMPLOYEE WAS ENTITLED TO ADDITIONAL MEDICAL CARE, AND ITS FINDING MUST BE REVERSED, FOR THE REASONS THAT THE OVERWHELMING WEIGHT OF THE COMPETENT AND SUBSTANTIAL EVIDENCE-THE FINDINGS OF THE TREATING PHYSICIANS, THE RECORDS OF EMPLOYEE'S PRIMARY CARE PHYSICIAN, AND THE FINDINGS OF DR. CHABOT-DEMONSTRATE EMPLOYEE HAS REACHED MAXIMUM MEDICAL IMPROVEMENT FOR HER CERVICAL AND LUMBAR SPRAINS AND LEFT UPPER EXTREMITY INJURIES, AND REQUIRES NO ADDITIONAL TREATMENT TO CURE OR RELIEVE THOSE WORK INJURIES; AND DR. VOLARICH'S TESTIMONY DID NOT CONSTITUTE COMPETENT OR SUBSTANTIAL EVIDENCE, WHICH COULD SUPPORT THE GRANT OF MEDICAL CARE, SINCE IT WAS WITHOUT SUPPORT IN AND CONTRADICTED BY THE RECORDS AND FINDINGS OF CLAIMANT'S TREATING AND PRIMARY CARE PHYSICIANS; AND SINCE THE TREATMENT DR. VOLARICH RECOMMENDED DID NOT FLOW FROM THE ACCIDENT OR WORK INJURIES.

## Analysis

### Belleview's Non-Compliance with Rule 84.04(d) [14]

As an initial matter, we note that none of Belleview's points relied on follow the "erred in/because/in that" formula contemplated by Rule 84.04(d):

(2) Where the appellate court reviews the decision of an administrative agency, rather than a trial court, each point shall:

(A) Identify the administrative ruling or action the appellant challenges;

(B) State concisely the legal reasons for the appellant's claim of reversible error; and

(C) Explain in summary fashion why, in the context of the case, those legal reasons support the claim of reversible error.

The point shall be in substantially the following form: "The [name of agency] *erred in* [identify the challenged ruling or action], *because* [state the legal reasons for the claim of reversible error, including the reference to the applicable statute authorizing review], *in that* [explain why, in the context of the case, the legal reasons support the claim of reversible error]."

Rule 84.04(d)(2) (emphasis added).

■■■ "Given that a template is specifically provided for in Rule 84.04(d)[ ], appellants simply have no excuse for failing to submit adequate points relied on." *Scott v. King*, 510 S.W.3d 887, 892 (Mo.App. E.D. 2017). Belleview's points relied on, which fail to comply with the requirements of Rule 84.04(d)(2), preserve nothing for appeal. *Moseley v. Grundy County District R-V School*, 319 S.W.3d 510, 513 (Mo.App. E.D. 2010). Nevertheless, because we are able to discern the nature of Belleview's claims without resorting to advocacy on its behalf or prejudicing the respondents to this matter, *ex gratia*, we decline to dismiss its points on this basis alone.[15]

### Belleview's Points I—IV: Authority of a Reviewing Court per section 287.495.1(4)

For ease of analysis, we combine Belleview's four points on appeal.

■■■ The authority and controlling principles discussed in the standard of review section of this opinion, *supra*, demonstrate that it is incumbent upon an appellant seeking to successfully challenge an award of the Commission, per section 287.495.1(4), to complete the following analytical steps:

1. Identify a factual proposition necessary to sustain the Commission's result;

2. Marshal all evidence in the record supporting that factual proposition, subject to the Commission's authorized factual and credibility determinations, explicit or implicit, and viewing the record

---

14. All rule references are to Missouri Court Rules (2017), unless otherwise indicated.

15. Our preference is to resolve matters on the merits, *Eder v. Lawson's Hardwood Floors, Inc.*, 403 S.W.3d 623, 625 (Mo.App. S.D. 2012), is not a license for non-compliance with Rule 84.04. We wield our discretion to overlook briefing violations with caution "because each time we review a noncompliant brief ex gratia, we send an implicit message that substandard briefing is acceptable. It is not." *Scott*, 510 S.W.3d at 892. The mandatory "erred in/because/in that" formula of Rule 84.04(d) is grounded in sound policy, including judicial objectivity, judicial economy, and fairness to the parties on appeal. *Id.* It is in the interests of all concerned that these policy objectives be advanced through compliance with Rule 84.04(d).

objectively where there were no explicit or implicit findings;

3. Demonstrate why the evidence from the second step lacks sufficient probative force on the issues, such that the Commission could not have reasonably believed the factual proposition set forth in step one.

See, *Houston v. Crider*, 317 S.W.3d 178, 186-87 (Mo.App. S.D. 2010); *see also, Jordan v. USF Holland Motor Freight, Inc.*, 383 S.W.3d 93, 95 (Mo.App. S.D. 2012).[16]

None of the companion argument sections in Belleview's four points relied on fulfill the requirements of this analytical sequence. In line with *Houston*, 317 S.W.3d at 187, adherence to this analytical formula is mandatory not just because this Court says so, but because it reflects the underlying criteria necessary for a successful challenge—the absence of any such criteria, even without a court-formulated sequence, dooms an appellant's challenge. Belleview's failure to comply with this mandatory analytical sequence "robs [Belleview's] arguments of most, if not all, persuasive or analytical value." *Hall v. Missouri State Treasurer*, 500 S.W.3d 282, 288 (Mo.App. S.D. 2016) (Scott, J., concurring).

Belleview makes occasional attempts to satisfy step 1, identifying factual propositions it argues necessary to sustain the award of the Commission. However, Belleview runs afoul in steps 2 and 3, based largely on its misapprehension of this Court's authority to countermand an award of the Commission per section 287.495.1(4). Rather than fully accounting for all supportive competent evidence (step 2), and then showing why that evidence lacks sufficient probative value (step 3), Belleview expends the majority of its argument on matters outside our authority to review or redress—namely: why the testimony, reports, and evidence favorable to its position were better than those favorable to Nichols, made more sense in light of other evidence, or were more worthy of the Commission's credulity.[17]

By way of example, in Point IV, Belleview argues that the Commission erred in finding that Nichols was entitled to additional medical care for the reason "that the overwhelming weight of the competent and substantial evidence" showed that Nichols' injuries "did not flow from the accident or work injuries." Belleview argues that the "findings of the treating physicians, the records of [Nichols'] primary care physician, and the findings of Dr. Chabot," showed that Nichols had

16. The four-step analytical sequence in *Jordan*, 383 S.W.3d at 95, ostensibly dealt with evidentiary "weight"—in substance, the analytical steps in *Jordan* and here both hinge on the probative value of the evidence supporting the award of the Commission. As Jordan's step 4 correctly indicates, the ultimate task of an appellant in a section 287.495.1(4) challenge is to "[p]rove, in light of the whole record, that the step 2 evidence [ (the evidence supporting the Commission's outcome) ], [is] so non-probative that no reasonable mind could believe the proposition [in step 1]." *Jordan*, 383 S.W.3d at 95.

17. Based on the language in Belleview's challenges, we discern that these analytical defects derive largely from Belleview's mis-apprehension that we have authority to countermand an award of the Commission as against the overwhelming weight of the evidence—we do not. *Hampton*, 121 S.W.3d at 222-23; *Hornbeck*, 370 S.W.3d at 629. In the wake of *Hampton*, the against-the-overwhelming-weight-of-the-evidence challenge has been subsumed by the sufficient-competent-evidence challenge; the only challenge now contemplated by section 287.495.1(4) is not supported by sufficient competent evidence in the record. "Contrary to the overwhelming weight of the competent and substantial evidence," the challenge Belleview posits in all four of its points, is not a recognized challenge under section 287.495.1.

reached maximum medical improvement for her "cervical and lumbar sprains and left upper extremity injuries[.]" Further, Belleview suggests that Dr. Volarich's testimony as to necessary future treatment was not sufficient competent evidence on this issue because it contradicted the records and testimony of Nichols' treating and primary care doctors, and because Dr. Volarich's opinion that Nichols' work injury was the prevailing factor in causing her neck and back problems—and resulting disability—were "speculation or conjecture." *Ex gratia*, we curatively interpret Point IV as a challenge that the award of the Commission was not supported by sufficient competent evidence.

We need not entangle ourselves with Belleview's numerous arguments and sub-arguments as to what evidence the Commission should have believed (but did not), or should have given more weight (but did not). A section 287.495.1(4) challenge succeeds only in the demonstrated *absence* of sufficient competent evidence; evidence *contrary* to the award of the Commission, regardless of quantity or quality, is "irrelevant." *Hornbeck*, 370 S.W.3d at 629.

This Court roundly rejected arguments with similar analytical defects in *Dwyer v. Federal Exp. Corp.*, 353 S.W.3d 392, 395 (Mo.App. S.D. 2011):

Employer's extensive and varied arguments are of three types:

1. Claimant's experts should not have been believed because ...

2. Employer's experts were more believable because ...

3. Claimant's testimony was not credible because ...

Such arguments, in effect, invite us to violate our rules of review by substituting our view of witness credibility for that of the Commission. We cannot and will not do so.... The Commission believed Claimant on stated causation-related issues, despite Employer's attacks on his credibility. These determinations bind us, regardless of our views or Employer's arguments about witness credibility.

. . . .

The Commission believed two physicians, one being Claimant's surgeon and treating doctor, whose opinions were admitted without substantive objection. This testimony adequately supports the award; its admission is not challenged on appeal. Employer offered contrary evidence, but we defer to the Commission's choice between competing medical opinions. Such decisions lie within the Commission's sole discretion and are not subject to appellate review.

*Id.*

Further, Belleview's arguments as to the Commission's disability rating are not well founded. As our Western District has indicated:

Appellate courts have affirmed disability ratings made by the Commission which exceeded the highest of the percentages expressed in medical opinions. Additionally, the Commission has the power to disregard a joint stipulation of facts that was entered into by the parties.... The Commission is not bound by the experts' exact percentages of disability and is free to find a disability rating higher or lower than that expressed in medical testimony. This is because a claimant's degree of disability is not solely a medical question. As such, the Commission [is] not required to accept the specific rating percentage assigned by the testifying doctor, notwithstanding the uncontradicted nature of his testimony.

*Taylor v. Labor Pros L.L.C.*, 392 S.W.3d 39, 45–46 (Mo.App. W.D. 2013) (internal quotations and citations omitted). Nichols'

disability rating was within the province of the Commission's expertise, and it was free to make its own determination, which it did.

■■■ Belleview also argues that Dr. Volarich's medical opinion that Nichols' work injury was the prevailing factor in her neck and back injuries, and resulting disabilities, was "speculation or conjecture," [18] and therefore not sufficient competent evidence as to causation. However, Belleview fails to direct this Court to any portion of the record wherein it timely objected to the now challenged portion of Dr. Volarich's deposition testimony on the basis of lack of foundation, or moved to strike such testimony. Further, at the time Exhibit 1-A, Dr. Volarich's report, and Exhibit 1-C, Dr. Volarich's deposition, were offered into evidence before the ALJ, Belleview's counsel affirmatively stated that Belleview had "no objection" to their admission. As such, Belleview's current arguments regarding Dr. Volarich are unpreserved for our review. *See, **Wells v. Director of Public Safety**, 295 S.W.3d 597, 600 (Mo.App. E.D. 2009).

Unmade evidentiary objections, shoehorned into evidentiary sufficiency claims, are not novel before this Court. Neither has our authority expanded, nor our inclination whetted, to entertain this species of Johnny-come-lately argument, since we flatly rejected it in **Proffer v. Fed. Mogul Corp.**, 341 S.W.3d 184, 187 (Mo.App. S.D. 2011):

> Employer asks us to dismiss such testimony as 'speculative.' This misses the distinction between *admissibility* of evidence and *submissibility* of a case.

Adequacy of the factual or scientific foundation for expert opinion is an *admissibility* issue which is waived absent a timely objection or motion to strike. The opinions of Drs. Park and Musich, being admitted without objection, can be considered as any other evidence in determining *submissibility* of the case. Employer cannot back-door, under the guise of an insufficiency of evidence claim, a challenge to these doctors' opinions.

*Id.* (internal quotations and citations omitted) (emphasis in original).

The award of the Commission was supported by sufficient competent evidence in the record. Belleview's Points I, II, III, and IV are denied.

The award of the Commission is affirmed.

NANCY STEFFEN RAHMEYER, C.J./P.J.—Concurs

DANIEL E. SCOTT, J.—Concurs in Result in Separate Opinion

## OPINION CONCURRING IN RESULT

DANIEL E. SCOTT, concurring.

"Belleview's points relied on, which fail to comply with the requirements of Rule 84.04(d)(2), preserve nothing for appeal," to quote the principal opinion. I agree and, in this particular case, would end our analysis there.

Rule 84.04 is *mandatory* and includes a *mandatory* template. **Scott v. King**, 510 S.W.3d 887, 891-92 (Mo.App. E.D.2017); Rule 84.04(d)(1)-(3).[1] So Belleview "simply [had] no excuse for failing to submit ade-

---

**18.** We note that the thread of this argument runs through all four of Belleview's points relied on.

**1.** Rule 84.04(d) "is crystal clear in its requirements and even provides a formula for compliance." Mark G. Arnold, *Points Relied On,*

17 Mo. Prac., Civil Rules Practice § 84.04:5 (2017 ed.). When this rule is violated, a likely reason is that "the issue has no merit." *Id.*

quate points relied on." *Scott*, 510 S.W.3d at 892. Yet every point ignores this mandate and mandated template. Worse yet, none belies even a token effort to comply.

Sometimes we look past such deficiencies, especially when an inexperienced lawyer has at least tried to comply or when the error seems unintentional, unknowing, or otherwise understandable and not willful. But Belleview's experienced and talented counsel work at or near the high end of the appellate-practice spectrum. Attorneys of this caliber and appellate experience do not simply overlook Rule 84.04(d)'s mandate and mandatory template.

In these circumstances, since we have decided that Belleview's points preserve nothing for appeal, I would affirm on that basis alone. "[E]ach time we review a noncompliant brief ex gratia, we send an implicit message that substandard briefing is acceptable. It is not." *Id.*