

# Missouri Court of Appeals
### Southern District
### Division Two

JOAN KNUTTER,                              )
Deceased Employee by                       )
MICHAEL KNUTTER,                           )
                                           )
    Claimant-Respondent,            )
                                           )
vs.                                        )    No. SD35644
                                           )
AMERICAN NATIONAL INSURANCE,               )    **Filed:  May 13, 2019**
                                           )
    Employer-Appellant.             )

### APPEAL FROM THE LABOR AND INDUSTRIAL RELATIONS COMMISSION

### <u>AFFIRMED</u>

This is an appeal from an award of compensation in the amount of $43,160.00 entered by the Labor and Industrial Relations Commission ("the Commission") in favor of Michael Knutter ("Claimant").  Claimant's mother, Joan Knutter ("Employee"), worked for American National Insurance ("Employer").  She broke her ankle when she slipped and fell on ice outside of her workplace on March 25, 2013.  On May 9, 2013, Employee died following a saddle pulmonary embolism, which related to the immobility that resulted from her workplace injury.  Employee's husband, Karl Knutter ("Husband"), asserted a claim for dependent benefits.  On July 17, 2015, Husband died. After Husband's death, Employee and Husband's son, Michael Knutter ("Claimant"), was substituted as the personal representative of Husband.

Employer raises four points on appeal. Points 1-3 challenge the award as not based on sufficient competent evidence. Point 4 challenges the basis of Claimant's substitution for Husband. Because there was sufficient competent evidence to support the Commission's award, and because Employer's specific challenge to the basis for Claimant's substitution was not raised below, we affirm.

## Standard of Review

"On appeal, this Court reviews the Commission's decision to determine if it is 'supported by competent and substantial evidence upon the whole record.'" *Johme v. St. John's Mercy Healthcare*, 366 S.W.3d 504, 509 (Mo. banc 2012) (quoting Mo. Const. Art. V, § 18). This Court:

> may modify, reverse, remand for rehearing, or set aside the award upon any of the following grounds and no other:
>
> (1)    That the [C]ommission acted without or in excess of its powers;
>
> (2)    That the award was procured by fraud;
>
> (3)    That the facts found by the [C]ommission do not support the award; [or]
>
> (4)    That there was not sufficient competent evidence in the record to warrant the making of the award.

§ 287.495.1.[1]

This Court reviews questions of law *de novo*, but gives deference to the Commission on issues of fact, credibility determinations, and the weight the Commission afforded to conflicting evidence. *Malam v. State, Dept. of Corrs.*, 492 S.W.3d 926, 928 (Mo. banc 2016). When medical causation is not within common experience or knowledge, it must be established by scientific or medical evidence that

---

[1] Unless otherwise indicated, all statutory references are to RSMo Cum. Supp. (2013).

shows the relationship between the claimant's condition and the asserted cause.

***Beatrice v. Curators of Univ. of Mo.***, 438 S.W.3d 426, 435 (Mo. App. W.D. 2014).

Medical opinion testimony as to causation is competent, and can be viewed as

substantial evidence. ***Id.*** This Court affords the Commission deference "in resolving

conflicting medical testimony given by various expert witnesses." ***Cole v. Alan Wire

Co.***, 521 S.W.3d 308, 310 (Mo. App. S.D. 2017).

## Background

On March 25, 2013, Employee, while in the course and scope of her employment,

fractured her ankle when she slipped and fell on ice outside of her workplace. Initially,

Employee was given a protective splint and crutches to assist with her non-weight

bearing instructions. On April 1, 2013, Employee saw an orthopedic physician, Dr.

Robert Bennett ("Dr. Bennett"). Dr. Bennett's notes indicated that Employee had

"slipped and put some pressure on [her ankle] since the time of injury" so he elected to

treat her with a short-leg, non-walking cast and a wheelchair was also prescribed. On

May 3, 2013, Employee again saw Dr. Bennett. He noted that Employee's previous cast

was "quite loose as her swelling ha[d] decreased" and her fracture was healing well.

Employee received a new short-leg cast, and Dr. Bennett scheduled a follow-up

appointment for two weeks later.

On May 9, 2013, Employee experienced shortness of breath while she was sitting

on the toilet, and was transported to the Emergency Department by ambulance. She

suffered a saddle pulmonary embolism and died the same day. Husband timely asserted

a claim for dependent benefits as a relative by marriage of a deceased employee.

However, while the underlying claim was still pending, Husband died on July 17, 2015.

On July 31, 2015, Claimant filed a "Motion for Substitution of Party and Suggestion of

Death."  After oral argument before the Administrative Law Judge ("ALJ"), Claimant's motion was granted and Claimant was substituted as Husband's "only surviving son and personal representative to his estate[.]"

During the subsequent hearing on the claim, the ALJ reviewed reports from four different expert doctors as to whether Employee's ankle fracture led to the pulmonary embolism that caused her death.  Claimant's experts, Dr. Mitch Mullins ("Dr. M. Mullins") and Dr. Thomas Wright ("Dr. Wright"), opined that Employee's ankle injury and resulting immobility led to her death by pulmonary embolism.  By contrast, Employer's experts, Dr. Randall Cross ("Dr. Cross") and Dr. John Randolph Mullins ("Dr. J. Mullins"), opined that the exact cause of Employee's pulmonary embolism was unknown and her death could not be directly connected to her ankle fracture.

The ALJ found in favor of Employer.  The Commission, however, reversed the ALJ's decision.  In its findings of fact, the Commission stated:

> We do not dismiss the ALJ's observation that because there was no autopsy, no medical records document the specific location of [Employee's] blood clot or deep vein thrombosis.  However, we disagree with the ALJ's conclusion that it is purely speculative to link [Employee's] work-related right ankle injury and her fatal saddle pulmonary.  Neither Dr. Cross' identification of a multitude of other risk factors based [on Employee's] medical history and hospital records, nor Dr. J. Mullins' inability to find examples in medical literature of individuals who had ankle fractures and experienced onset of pulmonary embolus while sitting on the toilet, convince us that [Employee's] fatal pulmonary embolism following forty-five days of virtually total immobility due to confinement to a wheelchair immobilization was purely coincidental.  ***We find, based on the credible expert medical opinions of Dr. Wright and [Dr. M. Mullins], that the prevailing cause of [Employee's] death was her March 25, 2013, traumatic ankle injury and subsequent immobilization, resulting in venous stasis and ultimately causing her fatal saddle pulmonary embolism.***

(emphasis added). The Commission awarded Claimant death benefits due and owed at the time of Husband's death in the amount of $43,160.00. The Commission also upheld the substitution of Claimant in place of Husband.[2] This appeal followed.

## Discussion

Employer's points 1-3 contend that the Commission's decision lacks sufficient competent evidence pursuant to § 287.495.1(4). Specifically, Employer's point 1 contends there is insufficient evidence that Employee was "virtually totally immobilized" for 45 days prior to her death, including the time between her May 3 appointment with Dr. Bennett and her death on May 9. Employer's point 2 alleges there is a lack of evidence that Employee's pulmonary embolism originated in her lower extremities that were purportedly immobilized. Employer's point 3 contends there was no expert testimony that Employee's injury was the "prevailing factor" in causing her death, or in the alternative, that the expert testimony the Commission relied on was "inadequate and not based on sufficient facts and data."

By claiming that the Commission's award is not supported by competent and substantial evidence according to § 287.495.1(4), Employer triggers a specific analytical process, whereby Employer must:

1. Identify a factual proposition necessary to sustain the Commission's result;

2. Marshal all evidence in the record supporting that factual proposition, subject to the Commission's authorized factual and credibility determinations, explicit or implicit, and viewing the record objectively where there were no explicit or implicit findings;

---

[2] The parties stipulated Employee was underpaid temporary total disability benefits in the amount of $116.48. The Commission awarded these benefits to Claimant and they are not in dispute in this action.

5

3. Demonstrate why the evidence from the second step lacks sufficient probative force on the issues, such that the Commission could not have reasonably believed the factual proposition set forth in step one.

***Robinson v. Loxcreen Co., Inc.***, Nos. SD35649 & SD35650 Consolidated, 2019 WL 1614592, at \*3 (Mo. App. S.D. Apr. 16, 2019); ***Nichols v. Belleview R-III Sch. Dist.***, 528 S.W.3d 918, 927-28 (Mo. App. S.D. 2017). "A section 287.495.1(4) challenge succeeds only in the demonstrated *absence* of sufficient competent substantial evidence; evidence *contrary* to the award of the Commission, regardless of quantity or quality, is 'irrelevant.'" ***Nichols***, 528 S.W.3d at 922 (quoting ***Hornbeck v. Spectra Painting, Inc.***, 370 S.W.3d 624, 629 (Mo. banc 2012)). "[A]dherence to this analytical formula is ***mandatory*** . . . because it reflects the underlying criteria necessary for a successful challenge—the absence of any such criteria, even without a court-formulated sequence, dooms an appellant's challenge." ***Id.*** at 928 (emphasis added).

Point 1 illustrates Employer's failure in these regards. Employer admits that "as long as a patient *remained* immobilized" she would be at increased risk of embolism from the immobilized area, yet disregards the report of its own expert, Dr. Cross, acknowledging that Employee "had been in a wheelchair during much of the 45 days from the time of her ankle fracture until the day of her demise." Claimant's expert, Dr. M. Mullins, expressly relied on this in reaching his causation opinion that was credited by the Commission. Employer's point 2 argument suffers similar failings.

For the Commission's award to be reversed on a § 287.495.1(4) challenge, there must be an *absence* of sufficient competent evidence supporting it. ***Nichols***, 528 S.W.3d at 922. Here, "[r]ather than fully accounting for all supportive competent evidence (step 2), and then showing why that evidence lacks sufficient probative value (step 3)," ***id.*** at 928, Employer minimizes and undervalues the evidence that supports

6

the Commission's award.  In this way, Employer "effectively ignor[es] proof" that supports the award.  **Customer Eng'g Servs. v. Odom**, SD35638, 2019 WL 1109672, at *2 (Mo. App. S.D. Mar. 11, 2019).  This strips Employer's "argument of any analytical or persuasive value."  **Id.**; *see* **Jordan v. USF Holland Motor Freight, Inc.**, 383 S.W.3d 93, 95 (Mo. App. S.D. 2012).  Employer's points 1 and 2 are denied.

As to Employer's point 3, Employer references the statements made by Dr. Wright and Dr. M. Mullins that connect Employee's ankle injury with her ultimate death, but deems the words these doctors used to be insufficient to meet the "prevailing factor" standard under § 287.020.3(1).  Employer also criticizes the opinions and underlying methodology of Dr. Wright and Dr. M. Mullins.

"The determination of whether an accident is the 'prevailing factor' causing a claimant's condition is an inherently factual one."  **Malam**, 492 S.W.3d at 928.  Section 287.020.3(1) provides:

> In this chapter the term **"injury"** is hereby defined to be an injury which has arisen out of and in the course of employment.  An injury by accident is compensable only if the accident was the prevailing factor in causing both the resulting medical condition and disability.  ***"The prevailing factor" is defined to be the primary factor, in relation to any other factor, causing both the resulting medical condition and disability***.

§ 287.020.3(1) (emphasis added).

The argument that a medical expert must use specific technical language to interpret § 287.020.3 has been rejected by the Supreme Court of Missouri.  *See* **Malam**, 492 S.W.3d at 929.  In **Malam**, the employee's expert had opined that a work incident was the "direct, proximate and prevailing factor precipitating [the employee's health] crisis."  **Id.** at 927.  The Commission deemed this terminology insufficient to meet the "prevailing factor" standard.  **Id.** at 927-28.  The Supreme Court of Missouri rejected

7

the Commission's "***overly technical and parsed analysis*** of [the expert's] testimony that overlooks the ***plain meaning*** of what he said." ***Id.*** at 929 (emphasis added). The words a medical expert uses are important "not so much in and of themselves, but as a reflection of what impression such witness wishes to impart." ***Id.*** (quoting ***Mayfield v. Brown Shoe Co.***, 941 S.W.2d 31, 36 (Mo. App. S.D. 1997)). The Supreme Court of Missouri in ***Malam*** concluded that the expert's opinion should be "[r]ead in context" for its "plain meaning," and under this analysis, the expert's testimony met the prevailing factor standard. 492 S.W.3d at 929.

Here, the opinions of Dr. Wright and Dr. M. Mullins – read in context for their plain meaning – show their respective opinions that Employee's ankle injury was the prevailing factor that caused her pulmonary embolism. For example, Dr. Wright stated that the "proximal cause of [Employee's] saddle pulmonary embolism (PE) was directly the result of her immobility secondary to [the] fracture of her right ankle[;]" that her immobility was the "tipping point and proximate cause" of the pulmonary embolism; and that the ankle fracture was the "inciting cause" of the embolism.

Dr. Wright discussed the risk of pulmonary embolism for the general population and compared that to Employee's risk factors. Dr. Wright noted that, for Employee, "the ***key*** precipitating event was her fall and ankle facture." (emphasis added). Employee's lack of ambulation "is the single most important risk factor mathematically and the final contributing factor" to Employee's embolism. By his calculations, Employee had a "52.2% risk of [deep vein thrombosis/pulmonary embolism] if she remained immobile for greater than several days."[3]

---

[3] Dr. Wright submitted a supplemental report in response to Dr. J. Mullins's criticisms of his methodology, where Dr. Wright concluded that he stood by his previous opinion and his "math" regarding

Similarly, Claimant's other expert, Dr. M. Mullins, stated that: "[t]he cause of the blood clot was from venous stasis from immobilization from the ankle fracture" and that "it is within a reasonable degree of medical certainty that the ankle fracture lead [sic] to venous stasis which ultimately led to a saddle embolism." He noted that "[al]though other factors are possible, it is not reasonable to consider them with the weight that a recent trauma has in the development of pulmonary emboli."

The "plain meaning" of the opinions of Dr. Wright and Dr. M. Mullins, when read in context, was that Employee's ankle injury and resulting immobilization was the prevailing factor that ultimately led to her death. The Commission found these experts to be credible and relied on their opinions when it found that Employee's ankle injury and subsequent immobilization was the "prevailing factor causing her venous stasis, which led to a saddle pulmonary embolism and death[.]" As in *Malam*, we do not require an expert to use "overly technical" words to meet the "prevailing factor" standard. 492 S.W.3d at 929; *see also* ***Treasurer of the State of Mo. v. Majors***, 506 S.W.3d 348, 353 (Mo. App. W.D. 2016) (rejecting claim that "'magic words' like 'certify' and 'permanent and total disability'" were necessary rather than the "clear and plain import" of expert's testimony).

Furthermore, as to Employer's argument that the opinions of Drs. Wright and M. Mullins were "not based on sufficient facts or data[,]" we give deference to the Commission when it resolves conflicts among the medical testimony from different expert witnesses. *Cole*, 521 S.W.3d at 310. Once a doctor's opinion is admitted without objection, as here for the opinions of both Dr. Wright and Dr. M. Mullins, it is "up to the

Employee's fatal pulmonary embolism. The Commission ultimately deemed the opinion of Dr. Wright to be credible.

9

Commission to assess the credibility of the doctor's testimony and determine what weight to give that evidence." ***Lacy v. Fed. Mogul***, 278 S.W.3d 691, 700 (Mo. App. S.D. 2009). In this case the Commission found these doctors to be credible and relied on their opinions. The Commission's award, therefore, was supported by sufficient competent evidence. Employer's point 3 is denied.

As to point 4, Employer now argues that the Commission erred under § 287.495.1(1) and (4) in that it improperly allowed Claimant to be substituted for Husband when there was no evidence that Claimant had opened an estate on behalf of Husband and had been properly named Husband's "personal representative" for purposes of § 287.230. Based on the record provided, this was not the theory that Employer asserted below.

After Husband's death in July 2015, Claimant filed a "Motion for Substitution of Party and Suggestion of Death." Employer filed written objections, stating that Employer objected to this substitution because it did not "believe that Section 287.230 RSMo., provides for such substitution when the alleged dependent dies rather than the ***employee***." Further, Employer stated that "there is no provision for the substitution of alleged dependents in the workers' compensation law such that [Claimant] can take over the benefits alleged by [Husband] as dependent of [Employee.]" The ALJ entered an Order with findings and substituted Claimant as Husband's "only surviving son and personal representative to his estate[.]"[4]

---

[4] The ALJ's order references an oral argument on this issue heard on September 17, 2015, but this argument is not in our record.

10

In its appeal to the Commission, Employer asked for the Commission's review on "[w]hether there was an appropriate substitution of [Claimant] for [Husband]."[5] The Commission considered the ALJ's Order regarding the substitution of Claimant for Husband and upheld the substitution.

Employer has now objected to Claimant's substitution by stating essentially that there should have been a probate estate established and a personal representative appointed through the probate court. Employer's appellate brief states that proper procedures for determining Claimant's appointment were not followed in that Claimant failed to produce issuance of letters of administration or "evidence that he administratively opened an estate for [Husband] or that he was properly appointed his personal representative."

Nothing in the record shows that Employer's argument regarding the proof necessary for substitution of Claimant as Husband's personal representative under § 287.230 was raised below. "It has been a longstanding rule that issues that could have been, but were not, raised previously before the Commission cannot be litigated on appeal." *Spradling v. Treasurer of State*, 415 S.W.3d 126, 134 (Mo. App. S.D. 2013). These issues are not preserved for review. *Id*; *see also* *Archer v. City of Cameron*, 460 S.W.3d 370, 377 (Mo. App. W.D. 2015). Since Employer's argument was not preserved, Employer cannot now raise this matter on appeal. Employer's point 4 is denied.

---

[5] Both parties requested to file briefs and orally argue the case before the Commission. We have no record of these arguments.

**Decision**

The Commission's award is affirmed.

MARY W. SHEFFIELD, J. – OPINION AUTHOR

JEFFREY W. BATES, J. – CONCURS

DANIEL E. SCOTT, J. – CONCURS