**Bryan Keith HEDRICK, Jr., Claimant-Appellant,**

v.

**BIG O TIRES, Employer-Respondent,**

**and**

**Missouri Employers Mutual Insurance Company, Insurer-Respondent.**

**No. SD 34556**

Missouri Court of Appeals, Southern District, Division One.

Filed: July 18, 2017

ANDREW LYSKOWSKI, Camdenton, MO, for Appellant.

SCOTT R. POOL, Jefferson City, MO, for Respondents.

DON E. BURRELL, J.

In July 2011, Bryan Keith Hedrick, Jr. ("Claimant") "intentionally [lit] a can of glue held in a co-worker's hand on fire with a lighter" at the Big O Tires ("Employer") shop in Camdenton.[1] His startled co-worker dropped the flaming can, which exploded on impact and severely burned both men. Claimant now appeals the final award of the Labor and Industrial Relations Commission ("the Commission") denying his claim for workers' compensation benefits. See section 287.495.[2]

Claimant's point on appeal claims the Commission erred "in concluding that [Claimant's] injury did not arise out of and in the course of the employment" under section 287.020.3(2) because Claimant "would not have been equally exposed to the injury in normal non-employment life." Because Claimant's intentional ignition of the glue was not an **"accident[,]"** as that term is defined in section 287.020.2, we affirm the decision of the Commission.

## Applicable Principles of Review and Governing Law

 A reviewing court may modify, reverse, remand for rehearing, or set aside a workers' compensation award upon a finding that: (1) the commission acted without or in excess of its powers; (2) the award was procured by fraud; (3) the commission's factual findings do not support the award; or (4) there was not sufficient competent evidence in the record to warrant the making of the award. [Section 287.495.1.] "Whether the award is supported by competent and substantial evidence is judged by examining the evidence in the context of the whole record. An award that is contrary to the overwhelming weight of the evidence is, in context, not supported by competent and substantial evidence."

*Greer v. SYSCO Food Services*, 475 S.W.3d 655, 664 (Mo. banc 2015) (quoting *Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220, 223 (Mo. banc 2003) (footnote omitted)). We review the Commission's findings and award, including any findings of the ALJ affirmed and adopted by the Commission. *Small v. Red Simpson, Inc.*, 484 S.W.3d 341, 344 (Mo. App. W.D. 2015). In doing so, we defer to the Commission's factual findings, credibility determinations, and weighing of conflicting evidence. *Greer*, 475 S.W.3d at 664.[3]

 The determination of whether an incident was "a compensable accident under the Workers' Compensation Law" and an injury arose out of the claimant's employment are questions of law that we review *de novo*. *Young v. Boone Elec. Coop.*, 462 S.W.3d 783, 786, 788 (Mo. App. W.D. 2015). We will not reverse the Commission's decision if it "reaches the right

---

1. Insurer, Missouri Employers Mutual Insurance Company, is included as Respondent on appeal. References to "Employer" shall also include "Insurer," and all references to "Insurer" shall also include "Employer." *See* section 287.030.2, which provides that "Employer" includes "Insurer" and/or "Insurer" includes "Employer."

2. All statutory references are to RSMo 2016.

3. We find certain logical difficulties in applying *Hampton*'s directive to "examine the whole record to determine if it contains sufficient competent and substantial evidence to support the award," 121 S.W.3d at 222-23, in cases involving a *non*-award by the Commission—i.e., a decision against the party with the burden of persuasion—for the reasons set out in *White v. Dir. of Revenue*, 321 S.W.3d 298, 305 (Mo. banc 2010). However, both the majority and dissenting opinions in *Malam v. State, Dep't of Corr.*, 492 S.W.3d 926, 928, 930 (Mo. banc 2016), purported to use the *Hampton* standard in their analyses of the Commission's affirmance of a decision denying compensation, so we will continue to apply it to the best of our ability.

result even if it gave a wrong or insufficient reason for its ruling." *Ellis v. Mo. State Treasurer*, 302 S.W.3d 217, 220 (Mo. App. S.D. 2009).

## Evidentiary Summary and Procedural History

At the outset of the evidentiary hearing before the ALJ, counsel for the parties confirmed "that the issues to be resolved ... are the occurrence of an accident, and the causation of the injuries alleged."

Claimant testified that he worked for Employer fixing tires, performing vehicle alignments and oil changes, and doing "[g]eneral mechanic work[.]" Fixing tires sometimes required using an adhesive, and multiple techniques were used to dry the adhesive, including simply waiting or "light[ing] it on fire [to] make it very sticky and tacky[.]" When this was done, the glue can was "put back in a cabinet away from where" the applied glue was being dried. Claimant had seen a similar technique used at another tire shop, and he had used such a technique at Employer's shop. He sometimes used his own lighter, and he sometimes used a lighter from Employer's shop.

Another employee, Kyle Uchtmann, testified that mechanics were not supposed to use a lighter on tire glue, but he had seen it being used in that way at a tire shop. The manager of Employer's shop, Benjamin Pruitt, had witnessed employees "using a lighter during the tire patching process[.]" There was testimony from these employees and Claimant that other flammable tasks were sometimes performed in connection with the repairs made in the shop.

Claimant said that he had previously engaged in "horseplay on the job" at Employer's shop, and such horseplay included "squirting people with the washer fluid hose, putting stuff on door handles to make them slick, ... snapping a rag or something[,]" and using a "large air tank" to shoot "under the bathroom door to make a dust cloud or ... blow their clothes up[.]" Claimant had witnessed another employee, Steve Milazzo, engaging in horseplay.

Mr. Pruitt testified that there had been "occasional joking around" at the shop, but "[n]othing [he] would consider harmful or dangerous, no." Mr. Pruitt testified that the horseplay had involved Claimant and an assistant manager, Steven Moore, "wrestling around[,]" and Mr. Pruitt thought "that someone potentially could get hurt wrestling around[.]" When Mr. Pruitt became aware of the wrestling, he reprimanded Claimant and Mr. Moore, and Mr. Pruitt believed that it "didn't occur again[.]"

Claimant testified that the horseplay at Employer's shop "never" involved "any dangerous stuff[,]" he "never did any dangerous stuff[,]" and he knew that "[l]ighting a can of glue on fire would be dangerous[.]" Based upon Claimant's safety training from Employer and others, he knew that the "glue that was used to patch and repair tires is inherently dangerous[.]" He admitted that "[t]here would not have been any legitimate function in doing [his] job that would have caused [him] to use a lighter and ignite a can of glue on fire when a co-worker was holding it in his hand[.]"

Claimant testified that he "really ha[d] no recollection" of his activities on July 28, 2011, but he was told that he "showed up to work" that day, and his first memory thereafter was "[w]aking up in a hospital" on a subsequent day. He discovered later that he had been "in a coma" and "[v]ery heavily" sedated. The report of a medical evaluation performed by a physician was admitted into evidence, and records ad-

dressed within that report indicated that, on July 28, 2011, Claimant had suffered burns to between 40 and 49% of his body in a fire and explosion at Employer's shop.

Mr. Milazzo testified that he recalled being burned himself on the same occasion. Before this event, he had been "a mechanic for years[,]" and he had not been "trained or taught how to dry glue or adhesive by using a flame[,]" but he had seen Mr. Moore "use a lighter to dry the adhesive[.]" Mr. Milazzo had been "a little frustrated with how much horseplay went on at [Employer's shop.]" He had "witnessed [Claimant] light bits of paper or some materials on fire[,] and [Mr. Milazzo] had told [Claimant and Mr. Moore] that, you know, it needs to stop."

On the day Mr. Milazzo was injured, he observed Claimant "[g]oofing around, watching videos on his cell phone." Mr. Milazzo thought it was Claimant's last day at work for Employer. Mr. Milazzo recalled that just before he was injured, he was patching a tire that had been removed from a wheel. Mr. Milazzo had not asked for help patching the tire, he did not need help patching the tire, and he could not think of any reason related to job duties that Claimant would have had "a lighter near [Mr. Milazzo's] bottle of adhesive[.]" Mr. Milazzo was letting the glue "dry by air" and he did not "use a flame of any kind to dry the glue or adhesive during the patching process[.]" He was not a smoker, and he did not use a lighter in his work at Employer's shop. Mr. Milazzo testified that "immediately before he caught on fire[,]" Claimant "came up to [him] and . . . lit the can of glue on fire that was in [Mr. Milazzo's] hand and looked at [Mr. Milaz-

zo] and kind of smiled and then [Mr. Milazzo] immediately threw the bottle down because [he] was on fire." Mr. Milazzo said Claimant used "[a] lighter" to ignite the glue can, and Claimant was "laughing" as he lit it. The glue can fizzled and "spit" on Mr. Milazzo's arm, causing him to throw or drop it. When it landed, "[i]t exploded with a big flame." Mr. Milazzo "require[d] extensive treatment for [his] injuries" and was off work "quite a long time." [4]

An "H.R. Manager" for Employer, Scott Watson, testified that the safety manuals at the time of the incident included the directive that employees not have "flames around flammable items[.]" Claimant had not signed as having received or read the manual. Mr. Watson testified that it would not have been consistent with Employer's safety standards to have a lit lighter near "an open can of adhesive[.]" Mr. Watson investigated the incident and prepared a report. His report noted that Claimant "'alleges he set glue bottle on fire. . . . [and b]urned himself.'" According to Mr. Watson, Claimant was terminated as a result of the incident. Mr. Watson could not "think of any circumstance remotely similar to this occurring at any [of Employer's] location[s.]" He acknowledged that "[w]hen there's flammable liquids around and ways to start those liquids on fire, there's a risk of being burned[.]"

The ALJ denied benefits, finding that Claimant "failed to sustain his burden of proof that he was injured as the result of a compensable accident under Missouri's workers' compensation law." The ALJ also found that Claimant "failed to demonstrate a causal connection between the duties of his employment [for Employer] and inten-

---

4. Mr. Milazzo's treatment expenses were "paid for by workers' compensation[.]" In its decision concerning Claimant, the Commission distinguished Mr. Milazzo's status from Claimant's position, observing that Mr. Milaz- zo "was innocently performing his job duties when" a coworker "[chose] without warning to engage in an unprovoked, unexplained, and exceedingly dangerous act." *See* section 287.120.1.

tionally lighting a can of glue held in a co-worker's hand on fire with a lighter."

Claimant timely appealed that decision to the Commission. The Commission affirmed the denial of benefits, and it incorporated the ALJ's decision "to the extent not inconsistent with [the Commission's] supplemental decision." The Commission found that even though Claimant "expressly denied" engaging in dangerous horseplay, "he readily admitted that lighting a can of adhesive on fire was unquestionably dangerous." Finding that Claimant's injuries did not arise out of and in the course of his employment, the Commission reasoned: "Simply stated, the risk or hazard from which [Claimant's] injuries came was [his] own voluntary choice to engage in a spontaneous, unprecedented, and potentially deadly act when he lit a can of industrial adhesive on fire." This appeal timely followed. *See* section 287.495.1.

### Analysis

Claimant's point challenges the Commission's application of section 287.020.3(2), which addresses when an injury is "deemed to arise out of and in the course of employment[.]" Claimant's focus on this particular subsection skips over the first question raised at the hearing—whether, in fact, an "accident" had occurred as defined in the applicable workers compensation statutes. The ALJ found as a part of its decision that Claimant did not prove "that he was injured, as the result of a compensable accident[,]" and the Commission adopted and supplemented the ALJ's decision. We will affirm the Commission in reaching the correct legal result even if its reasoning did not dwell on Claimant's failure to prove that he suffered an accident. *See Ellis*, 302 S.W.3d at 220.

An employer is "liable, irrespective of negligence, to furnish compensation under the provisions of this chapter for personal injury or death of the employee by accident ... arising out of and in the course of the employee's employment." Section 287.120.1. In amending the law in 2005, the legislature expressed an intent "to reject and abrogate earlier case law interpretations on the meaning of or definition of "**accident**[.]" Section 287.020.10. "Section 287.020.2 was amended in 2005 to narrow the definition of accident[,]" *Miller v. Mo. Highway & Transp. Comm'n*, 287 S.W.3d 671, 672 (Mo. banc 2009), and an "**accident**" is now defined as "*an unexpected traumatic event* or unusual strain identifiable by time and place of occurrence and producing at the time objective symptoms of an injury caused by a specific event during a single work shift. An injury is not compensable because work was a triggering or precipitating factor." [5] Section 286.020.2 (emphasis added). "Taken apart,

---

5. Given the circumstances in this case, the focus of our attention is whether there was "an unexpected traumatic event[,]" not an "unusual strain[.]" As a result, our analysis does not address "unusual strain[.]"

One other definition of accident predating the 2005 amendments has been retained in section 287.120.1 providing liability for workers' compensation injuries, but it is of no assistance to Claimant. "The term "**accident**" as used in this section [providing employer liability] shall include, but not be limited to, injury or death of the employee caused by the unprovoked violence or assault against the employee by any person." Section 287.120.1.

We have previously "conclude[d] that the legislature intended no changes in the assault doctrine, as it had been announced in *Person* [*v. Scullin Steel Co.*, 523 S.W.2d 801 (Mo. banc 1975),] and applied thereafter in judicial decisions preceding the 2005 amendments to Chapter 287." *Flowers v. City of Campbell*, 384 S.W.3d 305, 312 (Mo. App. S.D. 2012). For purposes of this definition, "[u]nprovoked means that the claimant is not the aggressor." *Loepke v. Opies Transp., Inc.*, 945 S.W.2d 655, 660 (Mo. App. W.D. 1997) (overruled on other grounds by *Hampton*, 121 S.W.3d at 220, 223, 224).

the beginning of the definition of 'accident' describes two categories: (1) 'unexpected traumatic event,' or (2) 'unusual strain.' Neither phrase is defined in the statute. In arriving at their intended definitions, we are required to presume that the phrases are not redundant, and have distinct meanings." *Young*, 462 S.W.3d at 792 (footnote omitted).

 In *dicta*, the court in *Young* turned to the "plain and commonly understood meaning" from a dictionary to define the phrase " 'unexpected traumatic event' " as "an unforeseen happening relating to or resulting from a physical wound[.]" *Id.* at 792, 793. We adopt that reasoning here, with the caveat that "resulting from a physical wound" must not be understood to blur together the meanings of "accident" and "injury." [6] An injury, for purposes of workers' compensation, has its own definition which is not identical to the definition of an accident. "[T]he term **'injury'** is hereby defined to be an injury which has arisen out of and in the course of employment. An injury by accident is compensable only if the accident was the prevailing factor in causing both the resulting medical condition and disability." Section 287.020.3(1). Thus, it is the accident, and not the injury, that is the event which is unforeseen and relates to a wound. It is therefore possible that an *expected* traumatic event may produce unexpected injuries, but that does not change the event from a non-accident to an accident.

 As a result, we do not need to decide whether Claimant expected or foresaw the specific injuries he suffered. The issue is whether he expected or foresaw that the event of igniting a can of flammable adhesives held by another person could produce wounds. The Commission found that Claimant "readily admitted that lighting a can of adhesive on fire was unquestionably dangerous[,]" but Claimant made his "own voluntary choice to engage in a spontaneous, unprecedented, and potentially deadly act when he lit a can of industrial adhesive on fire."

As to Claimant, his action in igniting the can of flammable adhesive held by Mr. Milazzo was not an accident.[7] His point is denied, and the Final Award of the Commission Denying Compensation is affirmed.

JEFFREY W. BATES, P.J.—
CONCURS

MARY W. SHEFFIELD, C.J.—
CONCURS

---

**6.** The *Young* opinion also notes that "[w]hile this dictionary definition includes descriptions of mental injuries, the Legislature has placed additional restrictions on the application [of] the Workers' Compensation Law to mental injuries in sections 287.120.8 and 287.120.9." *Id.* at 793 n.12.

**7.** Our conclusion is confined to the unusual facts of this case. Our holding is *not* that any knowing lighting of a flammable substance

would fall outside the definition of "accident," and we will not engage in speculation about whether other scenarios involving other facts, such as the existence of particular safety measures, would result in different expectations about an event. Additionally, our analysis is constrained to the definition of accident that applies in workers compensation cases and is not based upon common law principles of tort liability.