MARY W. SHEFFIELD, P.J.
Wayne County, Missouri ("Employer"), appeals the award of permanent and total disability benefits issued by the Labor and Industrial Relations Commission ("the Commission") in favor of Dustin Elsworth ("Elsworth"). In five points on appeal, Employer challenges the Commission's finding that Employer failed to prove its entitlement to a penalty against Elsworth for his violation of Employer's safety rules. See § 287.120.5.[1] Because it is dispositive in this appeal, we address and deny only point 3, and need not address the remainder of Employer's points. The Commission's award to Elsworth is affirmed.
Background
On the job less than a month, 18-year-old Elsworth overturned a dump truck while rounding a corner on Route D in Wayne County in March 2007. The truck rolled twice, fracturing Elsworth's skull and placing him in a "persistent vegetative state" for the remainder of his life.[2] After post-hearing stipulations, the only question the parties asked of the administrative law judge ("ALJ") was whether Employer was entitled to a penalty under § 287.120.5 for alleged violations of safety rules adopted by Employer.
The only evidence of safety rules in effect at the time of Elsworth's injury came from the testimony of two people, James Hovis ("Hovis") and David Richman ("Richman"). Hovis was the Eastern District Commissioner for Wayne County. He interviewed and hired Elsworth "mostly to drive a dump truck." During Elsworth's initial interview on March 2, 2007, Hovis told Elsworth:
If you're on-if you're in the vehicles or the equipment, you observe the laws that's out there. Your hardhats and your seat belts is a must, and I don't think you want to hear the story I told them. But when they say what happens, I said you'll get one warning. This is what happens after that. I said you don't want to know. I won't go into the length about the story I told them there, but he was told here, I says, now, can you-can you *601 work under them conditions, and he said, yes, I can. He was eager to get going, so I decided to hire him.
Richman was Elsworth's direct supervisor. He testified as follows:
Q. Did you have any conversations about safety with an employee before he went to work?
...
A. I advised [Elsworth] that he should always wear a seat belt, you know, while driving a dump truck, obey all traffic laws, regulations.
Employer argued that Elsworth had violated these rules by speeding and failing to wear his seatbelt at the time of the crash. After an exhaustive review of the evidence, the ALJ found Employer had not met its burden of proof. The Commission adopted the ALJ's findings and supplemented with additional findings. Together, those findings were that: (1) Employer had not adopted reasonable rules for the safety of its employees; (2) Employer had not made a reasonable effort to cause its employees to obey its safety rules; and (3) Employer had not proven that Elsworth was not wearing his seatbelt and was speeding at the time of the accident. Employer challenges each of those findings in five points on appeal. Relevant additional evidence will be discussed below.
Standard of Review
We review the final decision and findings of the Commission and, to the extent adopted or incorporated by the Commission in its decision, the findings and conclusions of the ALJ. Sell v. Ozarks Medical Center , 333 S.W.3d 498, 505 (Mo. App. S.D. 2011). This Court must defer to the Commission's findings on issues of fact, the credibility of the witnesses, and the weight given to conflicting evidence. Treasurer of State-Custodian of Second Injury Fund v. Witte , 414 S.W.3d 455, 460 (Mo. banc 2013). In a challenge under § 287.495.1(4), this Court may modify, reverse, remand for rehearing, or set aside the award only upon a finding that "there was not sufficient competent evidence in the record to warrant the making of the award." § 287.495.1(4). "[W]e examine the whole record to determine if it contains sufficient competent and substantial evidence to support the award, that is, whether the award is contrary to the overwhelming weight of the evidence." Lawrence v. Anheuser Busch Cos. Inc. , 310 S.W.3d 248, 250 (Mo. App. E.D. 2010) ; see Hampton v. Big Boy Steel Erection , 121 S.W.3d 220, 222-23 (Mo. banc 2003).
Analysis
The Commission found that, prior to the date of Elsworth's accident, Employer "had not made a reasonable effort to cause its employees to use safety devices and to obey any rules adopted for the safety of employees." Employer's third point claims that the Commission erred in finding that "Employer failed to meet its burden of proving it made a reasonable effort to cause employee's [sic] to obey its safety rules or use safety devices provided because such finding is not supported by competent substantial evidence and is against the overwhelming weight of the evidence[.]" We disagree.
Missouri's Workers' Compensation Law provides:
Where the injury is caused by the failure of the employee to use safety devices where provided by the employer, or from the employee's failure to obey any reasonable rule adopted by the employer for the safety of employees, the compensation and death benefit provided for herein shall be reduced at least twenty-five but not more than fifty percent; provided, that it is shown that the employee had actual knowledge of the *602 rule so adopted by the employer; and provided, further, that the employer had, prior to the injury, made a reasonable effort to cause his or her employees to use the safety device or devices and to obey or follow the rule so adopted for the safety of the employees.
§ 287.120.5.
An award reduction under § 287.120.5 is an affirmative defense upon which Employer had the burden of proving that each element was "more likely to be true than not true." § 287.808; Carver v. Delta Innovative Servs. , 379 S.W.3d 865, 869 (Mo. App. W.D. 2012).[3]
The primary purpose of § 287.120.5 is to give employees an incentive to comply with safety regulations by shifting to the employees a portion of the costs associated with noncompliance in specified circumstances. Thompson v. ICI Am. Holding , 347 S.W.3d 624, 635 (Mo. App. W.D. 2011). But the provision also provides an indirect incentive for employers to promulgate, train employees on, and enforce safety rules designed to prevent workplace injuries. Id. Courts have generally looked at an employer's efforts to train and monitor employee compliance with safety rules when examining whether an employer has taken reasonable efforts to cause compliance. Id. at 633. Specific factors that have been reviewed include: (1) distribution of written safety materials;[4] (2) scheduling and presentation of regular training seminars educating employees concerning the rules; (3) warning employees that disciplinary action will be taken if employees fail to follow necessary guidelines; (4) completion by employees of a written test to confirm understanding of the rules; and (5) whether known violations of the safety rules have previously gone unpunished. See id. ; Carver , 379 S.W.3d at 870-71.
Sufficient competent evidence on the whole record supported the Commission's award. Employer failed to meet its burden of persuading the Commission that its award needed to be reduced due to *603 Elsworth's failure to follow Employer's safety rules. The Commission was not required to believe that Employer: (1) had adopted any training programs to ensure understanding and compliance with its safety rules; (2) had developed written policies or tests designed to impart the importance of following its safety rules; or (3) had adopted procedures to monitor employee compliance with its safety rules.
The Commission could find from the evidence adduced that Elsworth was an inexperienced driver, having obtained his driver's license less than six months prior to his first day with Employer. Elsworth had never driven a dump truck and had no commercial vehicle experience at all. William Hampton ("Hampton")[5] testified that Employer should have ensured Elsworth was qualified to operate the dump truck by training him in speed management, lane management, sight distance, vehicle inspection, and proper braking on grades and curves. Instead, the only evidence of Employer's training that Hampton uncovered were vague statements that Elsworth had accompanied or been accompanied by other drivers on a few occasions. Hampton concluded that Employer provided no specific training regarding the dump truck, the type of load that it carried, or general safety training for the dump truck. The Commission echoed Hampton's findings, noting that "the only ... training that the employee was made aware of was some amount of 'On the Job' training by a few people without any specificity as to what training was provided or received." Furthermore, the Commission questioned whether Employer had met its burden of proving reasonable efforts considering that Employer had directed Elsworth to drive the dump truck by himself when Elsworth held only a Class B commercial driver's instruction permit , which he had acquired less than two weeks before his first day on the job.[6]
Employer's arguments to the contrary regarding its reasonable efforts challenge the weight to be given to conflicting evidence, but this Court must defer to the Commission's findings on those factual issues. Hornbeck v. Spectra Painting, Inc. , 370 S.W.3d 624, 629 (Mo. banc 2012). This Court "may not substitute its judgment" on the evidence the Commission received. Id.
Point 3 is denied. We need not reach any of Employer's remaining points because Employer's failure to prove reasonable efforts is dispositive in this appeal.
Conclusion
The Commission's award is affirmed.
GARY W. LYNCH, J.-CONCURS
DON E. BURRELL, J.-CONCURS

Statutory references are to RSMo (2000) as amended through the date of Elsworth's injury, March 30, 2007. See Pavia v. Smitty's Supermarket , 366 S.W.3d 542, 549 (Mo. App. S.D. 2012).

Elsworth died in 2017. After a Commission finding that his wife, Amie Elsworth ("Mrs. Elsworth"), is the proper successor to his rights per § 287.580, the Commission substituted Mrs. Elsworth as the claimant, and we granted Elsworth's attorney's request to substitute Mrs. Elsworth as the respondent in this appeal.

This Court has previously noted "certain logical difficulties in applying Hampton 's directive to 'examine the whole record to determine if it contains sufficient competent and substantial evidence to support the award,' 121 S.W.3d at 222-23," in appeals such as this that involve a decision against the party with the burden of persuasion for the reasons stated in White v. Dir. of Revenue , 321 S.W.3d 298, 305 (Mo. banc 2010). Hedrick v. Big O Tires , 522 S.W.3d 919, 921 n.3 (Mo. App. S.D. 2017). Our supreme court has similarly noted that it is "semantically awkward" to apply the "competent and substantial evidence" standard from article V, section 18 of the Missouri Constitution (the same provision applicable to this appeal) in a case where a board of equalization found an applicant did not present sufficient evidence to support the granting of a variance. Antioch Cmty. Church v. Bd. of Zoning Adjustment of City of Kansas City , SC96215, 543 S.W.3d 28, 34 n.4, 2018 WL 1599776, at *3 n.4 (Mo. banc Apr. 3, 2018). We continued to apply the Hampton standard to the best of our ability in Hedrick because "both the majority and dissenting opinions in Malam v. State, Dep't of Corr. , 492 S.W.3d 926, 928, 930 (Mo. banc 2016), purported to use the Hampton standard in their analyses of the Commission's affirmance of a decision denying compensation[.]" Hedrick , 522 S.W.3d at 921 n.3. Our high court also applied the Hampton standard in the only case where it has reviewed a Commission finding that an employer failed to prove entitlement to a penalty under § 287.120.5-the same posture as this case. See Greer v. SYSCO Food Servs. , 475 S.W.3d 655, 664, 672 (Mo. banc 2015). We follow suit here, but-as noted in our standard of review above-reinforce that it is not an appellate court's role to reweigh conflicting evidence, make de novo findings of fact, or substitute the Commission's credibility findings with our own.

Section 287.120.5 does not require a written rule, and Employer did not have a written rule in effect at the time of Elsworth's accident.

Hampton was a former Missouri highway patrolman and former director of safety for a nationwide trucking company. He had performed thousands of accident reconstructions and routinely provided consultations on transportation safety issues, such as driver training and compliance with governmental regulations.

"A commercial driver's instruction permit shall allow the holder of a valid license to operate a commercial motor vehicle when accompanied by the holder of a commercial driver's license valid for the vehicle being operated and who occupies a seat beside the individual ... for the purpose of giving instruction in driving the commercial motor vehicle." § 302.720.1 (emphasis added).