

## Missouri Court of Appeals
### Southern District
### Division One

PHILLIP GUINN,                                    )
                                        )
          Appellant,                        )
                                          )
    vs.                                           )    No. SD36380 and SD36410
                                          )                Consolidated
TREASURER OF THE STATE OF MISSOURI        )
AS CUSTODIAN OF THE SECOND INJURY FUND, )    FILED: May 04, 2020
                                          )
          Respondent.                      )

### APPEAL FROM THE LABOR AND INDUSTRIAL RELATIONS COMMISSION

### **AFFIRMED**

Phillip Guinn ("employee") appeals the Final Award Denying Compensation (the "Award") by the Labor and Industrial Relations Commission (the "Commission") on his workers compensation claim for benefits against the Treasurer of the State of Missouri as custodian of the Second Injury Fund (the "Fund").[1] In two points relied on, Employee asserts that the Commission erred in denying his claim "because it incorrectly determined Employee was permanently totally disabled solely because of his preexisting disability at the time he left employment in March 2006" and "in ruling Employee's hearing loss and tinnitus disability did

---

[1] The Fund filed a cross appeal assigned case number SD36410, which was consolidated for all purposes with Claimant's appeal in SD36380. Our affirmance of the Award in Claimant's appeal renders the Fund's appeal moot and for that reason the Fund's appeal in SD36410 is hereby dismissed.

1

not combine with his preexisting Parkinson's disease disability to render him permanently totally disabled." Determining that neither point has merit, we affirm the Award.

## Factual and Procedural Background[2]

Employee began working with Solo Cup Company ("employer") in February 1987. He left that employment on March 1, 2006, when he was about 56 years old. Employee has not worked nor attempted to work since that date.

Employee filed a claim against employer and its insurer on January 17, 2013, alleging hearing loss and tinnitus due to harmful noise. The parties' settlement of the claim was approved on April 11, 2014, for a lump sum ($14,500.00) prorated as $10.56 a week relative to tinnitus. On May 7, 2014, employee filed a claim against the Fund, based on a primary injury of hearing loss and tinnitus, and a preexisting disability referable to Parkinson's disease.[3]

Employee developed symptoms of Parkinson's disease as early as 2002, and was diagnosed with the condition in August 2003. He continued to work for employer until March 1, 2006. In the last year or more of his employment, employee was highly accommodated by employer due to his declining health, tremors, weakness, lack of balance, and difficulty concentrating. At times, employee was present at work but doing very few of the physical tasks. He was unable to do certain tasks requiring dexterity and coordination. In the last year, he would show up for work and essentially stand around. Even the lesser duties, such as vacuuming and picking up things from the floor or stacking cups were difficult for employee to do. All of employee's job duties in 2006 were affected by his muscle spasms.

Fatigue, muscle weakness, muscle spasms, tremors, trouble walking due to balance, tenseness of his left arm, fatigue, a sensation of pins going up his left side, lack of dexterity,

---

[2] The facts in this background are generally taken from the Award without any further attribution.
[3] This claim was determined to be timely filed in *Guinn v. Treasurer of State*, 577 S.W.3d 847 (Mo.App. 2019).

2

dropping things, and slower reflexes were symptoms employee described that inhibited his ability to work in the last year of employment. He also indicated that he would have to rest after walking about 60 yards. When employee decided to retire in 2006, it was because he could no longer do the job due to symptoms of his Parkinson's disease. It was not because of any hearing loss or tinnitus. Hearing issues were not mentioned by employee in any discussion of his choice to retire, and were not identified by him to his employer as a reason for leaving at that time. Employee indicated that he would arrive at work already feeling "muscle tired." At the time he quit working, employee was concerned about his safety and the dangers posed in the workplace due to his Parkinson's symptoms.

Upon leaving work in 2006, employee applied for Social Security disability. He was awarded such benefits in 2006 on the basis of his Parkinson's disease.

Dr. Allen Parmet, the Fund's medical expert, found that Parkinson's was clearly present in 2003, but there was evidence of it even before that year. The condition was deteriorating from 2003 to March 2006, with worsening tremors and other symptoms. In September 2005, Dr. Michael North, employee's treating physician, expressed the opinion that he did not believe employee would be able to continue working. Likewise, Dr. R. Scott Duff, another of employee's treating physicians, also opined in 2005 that the disease was affecting employee to the degree that he did not think employee "could maintain gainful employment anymore." Dr. Parmet opined that employee was permanently and totally disabled in 2006 due to the Parkinson's disease alone.

Employee was exposed to harmful industrial noise in employer's workplace for a prolonged period, and he sustained some level of disability in the form of hearing loss. Some of the hearing loss, however, may be from age or other non-occupational causes. During his

3

employment, industrial hygiene studies established an excessive noise level was present in the extruder area where he worked. The noise level was rated at over 90 decibels. Employer began to require employees to wear ear plugs and ear muffs during the time of his employment. Employees had to remove the protection temporarily, when there was a need to hear co-workers. Aside from the use of hearing protection required for all employees, employee did not request or receive any special accommodation relative to hearing loss or tinnitus during the time of his employment.

There was a decline in employee's hearing during his employment which reached a plateau in the early 2000's. Employee's hearing impairment and tinnitus did not improve after leaving the employer. Nevertheless, he did not seek any treatment for his hearing issues during his employment or thereafter until after he filed his workers' compensation claim against employer in January 2013. About five months after filing that claim, a doctor suggested that employee might benefit from hearing aids. Employee waited about two years after that suggestion, however, to obtain hearing aids to see if they would help.

Dr. Parmet, opined "the results of the objective evidence of speech-reception thresholds and discrimination scores cause me to believe, to a reasonable degree of medical certainty, that there is no measurable degree of Disability due to tinnitus." He opined that no restrictions would be placed on employee due to this condition. He noted employee's audiogram of January 15, 2013, identified a speech reception threshold score within normal range, (bilaterally), and his speech discrimination score was considered in the lower part of the "good" range, (bilaterally), effectively, "normal ability to discriminate words." After reviewing medical records, he opined employee's hearing loss is probably "mixed-hearing loss" with contributions from age,

4

Parkinson's, infections, and allergies, as well as occupational noise and that "any or all of these could be causing and contributing to tinnitus."

Dr. Parmet also opined that some of employee's documented hearing loss could be attributable to the sensorineural forms of hearing loss that can be associated with Parkinson's or other neurodegenerative diseases or conditions affecting the nerves in the organs of hearing due to infection, hereditary conditions, aging, medications, etc. This type of hearing loss is contrasted with conductive hearing loss, most often associated with noise exposure. Dr. Parmet noted that Parkinson's onset can be preceded by hearing loss or other non-motor neurologic loss (e.g. loss of smell, taste). The fact that employee's hearing declined during employment, despite wearing both earplugs and earmuffs raised the question in his mind that the hearing loss could derive from the progression of the illness.

In the Award, as opposed to the opinions of employee's medical expert, the Commission found "Dr. Parmet's opinion persuasive that the Parkinson's disease is the reason for employee's permanent total disability" and "the opinion of Dr. Parmet to be credible and persuasive as to the nature, causes, and level of disability attributable to hearing disorders." The Commission also found credible Dr. Parmet's opinions "that employee was permanently and totally disabled in 2006 due to the Parkinson's disease alone" and "that [employee's] hearing loss and subjective complaints of tinnitus could have been secondary to his Parkinson's disease, in whole or in part."

The Commission concluded that "[e]mployee has not persuasively shown that the disability from his hearing loss issues combined with the disabling disease of Parkinson's to create a total disability" but rather that "employee was permanently and totally disabled solely as a result of his preexisting condition alone." The Commission in the Award denied employee's claim against the Fund "because employee has not met his burden of proof to show that his

preexisting disability referable to Parkinson's disease combined with his primary injury or hearing loss, to make him permanently and totally disabled."

Employee timely appeals the Commission's Award.

### Standard of Review

This Court reviews all final decisions, findings, rules, and orders of the Commission to determine "whether the same are supported by competent and substantial evidence upon the whole record." Mo. Const. art. V, § 18. The Commission's decision will be affirmed unless: "(1) the Commission acted without or in excess of its powers; (2) the award was procured by fraud; (3) the facts found by the Commission do not support the award; or (4) there was not sufficient competent evidence in the record to warrant the making of the award." *White v. ConAgra Packaged Foods, LLC*, 535 S.W.3d 336, 338 (Mo. banc 2017); § 287.495.1, RSMo 2000. "Upon appeal no additional evidence shall be heard and, in the absence of fraud, the findings of fact made by the [C]ommission within its powers shall be conclusive and binding." § 287.495.1, RSMo 2000. In addition to findings of fact, this Court also defers to the Commission's determinations as to credibility of witnesses and the weight given to conflicting evidence. *Greer v. SYSCO Food Servs.*, 475 S.W.3d 655, 664 (Mo. banc 2015).

*Annayeva v. SAB of TSD of City of St. Louis*, SC 98122, 2020 WL 1270758, at *2 (Mo. banc Mar. 17, 2020) (footnote omitted).

### Discussion

In both of his points relied on, employee asserts a section 287.495.1(4)[4] challenge to the Commission's denial of his claim, thereby asserting, as posited in that section, "there was not sufficient competent evidence in the record to warrant the making of the award."[5] In his first point, employee directs his section 287.495.1(4) challenge toward the Commission's finding that he was "permanently totally disabled solely as a result of his preexisting Parkinson's disease

---

[4] All references to section 287.495 are to RSMo (2000).

[5] Both of employee's points are deficient in that they fail to comply with the Rule 84.04(d)(2)(B) requirement for a point to "[s]tate concisely the legal reasons for the appellant's claim of reversible error." Nevertheless, the Fund, in its responding brief, construed each point as a section 287.495.1(4) challenge and responded to each point accordingly. In his reply brief, employee confirmed that both of his points were asserting a section 287.495.1(4) challenge as the legal reason for his claim of Commission error in denying his claim. Given that both parties have addressed employee's points premised upon this legal reason, we will do likewise.

disability" claiming that it was erroneous "in that *all* of the medical evidence established Employee was capable of employment in the open labor market considering only his Parkinson's disease disability at the time he left employment in March 2006." (Emphasis added.) In his second point, he directs his section 287.495.1(4) challenge toward the Commission's finding that his "hearing loss and tinnitus disability did not combine with his preexisting Parkinson's disease disability to render him permanently totally disabled" claiming that it was erroneous "in that *all* of the medical evidence established Employee's hearing loss and tinnitus disability combined with his preexisting Parkinson's disease disability to render him permanently totally disabled." (Emphasis added.) Because both of employee's points fail for the same reasons, we address them together.

The nature and extent of employee's preexisting Parkinson's disease disability and the causation, nature and extent of his primary hearing loss and tinnitus disability were contested issues before the Commission. Employee bore the burden of proof on each of these issues. *Johme v. St. John's Mercy Healthcare*, 366 S.W.3d 504, 509 (Mo. banc 2012) (the workers' compensation claimant bears the burden of proof to show that the claimant's injury was compensable in workers' compensation). This overall burden of proof consists of two separate burdens—the burden of production and the burden of persuasion. *Annayeva*, SC 98122, 2020 WL 1270758, at *3 n.8 (citing *Krispy Kreme Doughnut Corp. v. Dir. of Revenue*, 488 S.W.3d 62, 67 (Mo. banc 2016)).

In a workers' compensation case, an employee meets his or her burden of production when the employee introduces competent and substantial evidence on the whole record sufficient to support a finding on each of the facts necessary to that award. *Annayeva*, SC 98122, 2020 WL 1270758, at *3 n.8. "The burden of persuasion, on the other hand, requires the employee

7

actually 'to convince the fact-finder to view the facts in a way that favors [the employee].'" *Id.* (quoting ***Krispy Kreme Doughnut Corp.***, 488 S.W.3d at 67).

Here, assuming without deciding that employee met his burden of production, employee nevertheless failed to convince the Commission that he was permanently totally disabled due to a combination of his preexisting Parkinson's disease and his primary hearing loss and tinnitus disability. Having failed to carry that burden of persuasion, employee failed to carry his burden of proof and the Commission appropriately denied his claim against the Fund on that basis. In the Award, the Commission concluded that "employee has not met his burden of proof to show that his preexisting disability referable to Parkinson's disease combined with his primary injury or hearing loss, to make him permanently and totally disabled."

Other than conceding that "[t]he burden of proving an entitlement to compensation is on the employee[,]" employee's brief does not address or challenge the Commission's conclusion that he failed to carry that burden here. Similarly, employee has failed to address or cite any relevant legal authority supporting that his claim has some type of presumptive validity the Commission is required to recognize or that the Fund has a burden of production or persuasion it must satisfy in order to defeat such a presumptively valid claim. Indeed, either proposition is contrary to both the statutory admonition in section 287.800.2 RSMo Cum. Supp. (2005) that the Commission "shall weigh the evidence impartially without giving the benefit of the doubt to any party when weighing evidence and resolving factual conflicts" and an employee's burden of persuasion, and thereby the burden of proving the employee's claim.

In the absence of such a presumptive validity of a claim or a burden of production upon the party opposing the claim, a section 287.495.1(4) challenge that the denial of a claim is erroneous because it is not supported by competent and substantial evidence on the whole record

8

makes no logical sense. *See Parvin v. Camcorp Envtl., LLC*, SD36281, 2020 WL 772534, at *2 n.3 (Mo.App. Feb. 18, 2020) (posing question that "If reviewing courts don't search the record for evidence to support civil judgments against parties with the burden of proof because those judgments need no evidentiary support and are not subject to no-substantial-evidence complaints, should we review workers' compensation non-awards any differently?"); *Farmer v. Treasurer*, 567 S.W.3d 228, 231 (Mo.App. 2018) (contrasting analysis in *Malam v. State, Dep't of Corr.*, 492 S.W.3d 926, 928, 930 (Mo. banc 2016) vs. *White v. Dir. of Revenue*, 321 S.W.3d 298, 305 (Mo. banc 2010) and describing the difference as "nonsensical"); *Elsworth v. Wayne County*, 547 S.W.3d 599, 602 n.3 (Mo.App. 2018) (noting logical difficulties and semantic awkwardness in applying competent and substantial evidence on the whole record in review of ruling adverse to party with burden of persuasion); *Hedrick v. Big O Tires*, 522 S.W.3d 919, 921 n.3 (Mo.App. 2017) (noting logical difficulties in applying standard of competent and substantial evidence on the whole record in cases involving a non-award by the Commission, but also noting Supreme Court's application in *Malam*, 492 S.W.3d at 930). It is within this context that we note that our unanimous Supreme Court recently observed that "*[o]nly* factual findings that are necessary to make an award *for* the employee must be supported by competent and substantial evidence on the whole record." *Annayeva*, SC 98122, 2020 WL 1270758, at *3 n.8 (emphasis added). If that is accurate, then both of employee's points asserting section 287.495.1(4) challenges should be denied without any further discussion or analysis for failing to assert a cognizable legal basis for reversing the Award denying his claim because he failed to sustain his burden of proving that claim.

Even if a section 287.495.1(4) challenge is cognizable in this context, however, employee's points have no merit. Employee's assertion in both points that "*all* of the medical

evidence established" his position on the contested issues necessarily includes the converse proposition that *no* medical evidence supports the Commission's findings. That proposition is easily refuted by the medical evidence employee chose to completely ignore in his statement of facts and in his arguments under his points and which the Commission expressly cited in the Award and expressly found to be credible.

On August 4, 2016, Dr. Parmet prepared a medical report with regard to employee's claim against the Fund. That report was marked as the Fund's "Exhibit IX" and was admitted into evidence without objection. In reviewing employee's medical records, Dr. Parmet noted the following in his report:

> 09/16/2005: Michael North, M.D. saw him for "discussion of possibly applying for Disability later this year. His Parkinson's disease has progressively gotten worse over the last 6 to 9 months. He has a fairly significant left hand and arm tremor, and *I do not feel like he is going to be able to continue working in a factory for much longer*". Mr. Guinn reported that "he finally is willing to admit that he has Parkinson's disease and would like to at least get some initial workup". He was scheduled to see Dr. Duff. On neurologic examination, "cranial nerves II-XII are intact", and there was a tremor present. He was referred for Disability Evaluation.

> 12/21/2005: R. Scott Duff, M.D. saw him. He had stopped Sinemet and was on amantadine. Noted that miscommunications over medications had resulted in deterioration of his Parkinson control. He was to resume carbidopa/levodopa and to stop the amantadine, stating "*I don't think he can maintain gainful employment anymore*".

(Emphasis added.)

In his report, Dr. Parmet also opined to a reasonable degree of medical certainty[6] that employee "was Permanently and Totally Disabled in 2006 due to his Parkinson's disease alone" and that "[h]is hearing loss and subjective complaints of tinnitus may in fact have been secondary to his Parkinson's disease in part or totality." In the Award, the Commission

---

[6] "Medical opinions addressing compensability and disability shall be stated within a reasonable degree of medical certainty." Section 287.190.6(2) RSMo Cum. Supp. (2005).

expressly cited to this report by page reference in the transcript as containing these opinions and stated that "We find Dr. Parmet credible in these opinions."

Medical opinion testimony as to causation is competent, and can be viewed as substantial evidence. ***Knutter by Knutter v. Am. Nat'l Ins.***, 578 S.W.3d 824, 826 (Mo.App. 2019) (citing ***Beatrice v. Curators of Univ. of Missouri***, 438 S.W.3d 426, 435 (Mo.App. 2014) (quoting ***Hulsey v. Hawthorne Rests., Inc.***, 239 S.W.3d 156, 161 (Mo.App. 2007)). "'The Commission is free to believe or disbelieve any evidence.'" ***Sickmiller v. Timberland Forest Products, Inc.***, 407 S.W.3d 109, 113 (Mo.App. 2013) (quoting ***Underwood v. High Road Indus.***, LLC, 369 S.W.3d 59, 66 (Mo.App. 2012)).

> This Court defers to the Commission's factual findings and recognizes that it is the Commission's function to determine credibility of witnesses. *CNW Foods, Inc. v. Davidson*, 141 S.W.3d 100, 102 (Mo.App.2004). This Court "may not substitute its judgment on the evidence," and when the "evidence before an administrative body would warrant either of two opposed findings, the reviewing court is bound by the administrative determination, and it is irrelevant that there is supportive evidence for the contrary finding." *Pulitzer Pub. Co. v. Labor & Indus. Relations Comm'n*, 596 S.W.2d 413, 417 (Mo. banc 1980).

***Hornbeck v. Spectra Painting, Inc.***, 370 S.W.3d 624, 629 (Mo. banc 2012).

An effective section 287.495.1(4) challenge requires the challenger to marshal all record evidence favorable to the award. *See, e.g.*, ***Parvin***, SD 36281, 2020 WL 772534, at *2; ***Schlereth v. Aramark Uniform Services***, 589 S.W.3d 645, 652-53 (Mo.App. 2019); ***Harris v. Ralls County***, 588 S.W.3d 579, 596, 601 (Mo.App. 2019); ***Customer Eng'g Services v. Odom***, 573 S.W.3d 88, 91 & n.2 (Mo.App. 2019); ***Robinson v. Loxcreen Co.***, 571 S.W.3d 247, 250-51 (Mo.App. 2019); ***Nichols v. Belleview R-III Sch. Dist.***, 528 S.W.3d 918, 927-28 (Mo.App. 2017); ***Maryville R-II Sch. Dist. v. Payton***, 516 S.W.3d 874, 881 (Mo.App. 2017); ***Lincoln Univ. v. Narens***, 485 S.W.3d 811, 821 (Mo.App. 2016); ***Brune v. Johnson Controls***, 457 S.W.3d 372, 377 (Mo.App. 2015); ***Riley v. City of Liberty***, 404 S.W.3d 434, 440 (Mo.App.

11

2013); ***Jordan v. USF Holland Motor Freight***, 383 S.W.3d 93, 95 (Mo.App. 2012). Yet here, employee omitted any mention in his initial brief of Dr. Parmet's August 4, 2016, report, which is favorable to the Award, competent and substantial evidence supporting the Award, and refutes, by its very existence, the premise of both of employee's points that *all* medical evidence is contrary to the Award. This omission robs employee's arguments therein of any analytical or persuasive value, ***Parvin***, SD 36281, 2020 WL 772534, at \*3; ***Robinson***, 571 S.W.3d at 251; ***Odom***, 573 S.W.3d at 91; ***Brune***, 457 S.W.3d at 377; ***Jordan***, 383 S.W.3d at 95, and dooms his section 287.495.1(4) challenges, ***Nichols***, 528 S.W.3d at 928.

In his reply brief, after the Fund pointed out in its responding brief employee's complete omission in his initial brief of any mention of Dr. Parmet's August 4, 2016, report, employee acknowledges the report's existence in the record and that it "could have supported the Commission's award" except when compared with other evidence in the record. In demonstrating that exception, Employee then purports to discredit, contrary to the Commission's expressed credibility determinations, Dr. Parmet's August 4, 2016, report by pointing out employee's perceived inconsistencies within the report itself, with Dr. Parmet's subsequent report of August 29, 2016, with Dr. Parmet's deposition testimony, and with employee's own medical expert's testimony. Such credibility attacks, however, have no place and serve no analytical purpose in a section 287.495.1(4) challenge. *See **Annayeva***, SC 98122, 2020 WL 1270758, at \*3 n.8 (credibility determinations do not have to be supported by competent and substantial evidence on the whole record "and – once expressed by the Commission – are binding on this Court"). "A section 287.495.1(4) challenge succeeds only in the demonstrated *absence* of sufficient competent evidence; evidence *contrary* to the award of the Commission,

12

regardless of quantity or quality, is 'irrelevant.'" ***Nichols***, 528 S.W.3d at 929 (quoting

***Hornbeck***, 370 S.W.3d at 629).

For all of the above reasons, neither of employee's points have any merit.  Both points are denied.

## Decision

The Commission's Award is affirmed.

GARY W. LYNCH, P.J. – OPINION AUTHOR

NANCY STEFFEN RAHMEYER, J. – CONCURS

WILLIAM W. FRANCIS, JR., J. – CONCURS

13